UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CREATIVE DIRECTION CONSTRUCTION &
DESIGN, LLC,                                              Case No.: 1:25-cv-179 (FJS/DJS)

                         Plaintiff,

    -against-

HARCO NATIONAL INSURANCE COMPANY,

                         Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**


                                          **GLASSBERG & ASSOCIATES, LLC**
                                          Steven Glassberg, Esq. (SG2480)
                                          *Attorneys for Plaintiff*
                                          Creative Direction Construction
                                          & Design, LLC
                                          8 Haven Avenue, Suite 215
                                          Port Washington, New York 11050
                                          Tel: (516) 767-6711

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................................... 1

**STANDARD OF REVIEW** ........................................................................................................ 1

**ARGUMENT** ................................................................................................................................ 2

    **PLAINTIFF IS ENTITLED TO PAYMENT UNDER THE PAYMENT BOND ISSUED BY HARCO, THE SURETY, FOR LABOR AND MATERIALS PROVIDED ON THE PROJECT UNDER THE SUBCONTRACT WITH EMPIRE CORE GROUP, LLC, THE PRINCIPAL.** ...... 2

        A.    A Pre-requisite to a Payment Bond Claim under SFL § 137(3): the Existence of the Payment Bond ................................................................................................................... 4

        B.    The Existence of a Contractual Relationship between Plaintiff and ECG, Principal on the Payment Bond ................................................................................................................... 4

        C.    Plaintiff Properly Performed its Scope of Work for the Project Pursuant to the Subcontract ................................................................................................................... 5

        D.    Plaintiff Has Not Received Any Payment for Work Performed for ECG on the Project under the Subcontract for More Than Ninety Days Since its Last Day of Work ......................... 7

        E.    Although Plaintiff is Not Required to Provide Notice Due to its Direct Contractual Relationship with ECG, Plaintiff Nonetheless Properly Submitted Notice of its $1,123,106.53 Claim to Defendant within One Hundred Twenty Days of its Last Day of Work ......................... 7

    **PURSUANT TO SFL § 137(4)(c) PLAINTIFF IS ENTITLED TO REASONABLE ATTORNEYS' FEES** ................................................................................................................... 8

**CONCLUSION** ............................................................................................................................. 9

**PRELIMINARY STATEMENT**

Plaintiff Creative Direction Construction & Design, LLC ("Plaintiff" or "CDCD") respectfully submits this memorandum of law in support of the instant Motion for Summary Judgment pursuant to Rule 26 of the Federal Rule of Civil Procedure (Fed. R. Civ. P.) seeking judgment against Defendant Harco National Insurance Company ("Defendant" or "Harco") for the first cause of action in the amount of $1,123,106.53, with interest and attorney's fees pursuant to New York State Finance Law (SFL) § 137(4)(c), and for such other and further relief as to this Court may seem just, necessary, and proper.

**STANDARD OF REVIEW**

Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). At the summary judgment stage, the court's role is not to weigh evidence or determine the truth but to assess whether a genuine issue of material fact exists for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court does not resolve factual disputes but only decides if issues warrant a trial. *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir. 1984) (citing *Empire Elecs. Co. v. United States*, 311 F.2d 175, 179 (2d Cir. 1962)). A key purpose of summary judgment is to eliminate factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party bears the burden of proving the absence of a genuine dispute over material facts. *Garza v. Marine Transport Lines, Inc.*, 861 F.2d 23, 26 (2d Cir. 1998); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The Supreme Court has emphasized that summary judgment should be granted if the record, even without affidavits, demonstrates no genuine issue of material fact under Rule 56. *Celotex Corp.*, 477 U.S. at 323. A mere factual dispute will not defeat a properly supported motion;

1

the dispute must be genuine, meaning a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 247–48.

## ARGUMENT

### POINT I

**PLAINTIFF IS ENTITLED TO PAYMENT UNDER THE PAYMENT BOND ISSUED BY HARCO, THE SURETY, FOR LABOR AND MATERIALS PROVIDED ON THE PROJECT UNDER THE SUBCONTRACT WITH EMPIRE CORE GROUP, LLC, THE PRINCIPAL.**

Plaintiff's Motion for Summary Judgment should be granted, as Plaintiff is entitled to rely on the Payment Bond (as defined below), issued by Harco as surety, to secure payment for work performed for Empire Core Group, LLC ("ECG"), the principal under the Payment Bond.

It is well established that "[s]ureties … are bound by the conditions and limitations in the bond." *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009). More specifically, under New York law, a bond is a contract, and courts apply "standard principles of contract interpretation to determine the rights and obligations of a surety under a bond." *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 51 (2d Cir. 2004); *EM Ltd. v. Republic of Argentina*, 382 F.3d 291, 292 (2d Cir. 2004) (stating that a dispute over the meaning of a bond presents "a simple question of contract interpretation"). Additionally, while the surety may not have a direct contractual relationship with the claimant, the surety's liability under a payment bond is to be measured by the liability of its principal. *Underpinning & Found. Skanska, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 726 F. Supp. 2d 339, 343 (S.D.N.Y. 2010)

In this context, the Second Circuit has held that a compensated corporate surety is not favored by the law, and its suretyship contract will be construed in the manner most favorable to

the claimant. *Cam-Ful Indus., Inc. v. Fid. & Deposit Co. of Maryland*, 922 F.2d 156, 163 (2d Cir. 1991) (citing *Timberline Elec. Supply Corp. v. Insurance Co. of North America*, 72 A.D.2d 905, 906 (4th Dep't 1979), *aff'd*, 52 N.Y.2d 793 (N.Y. 1980)).

New York State Finance Law provides a statutory remedy to ensure that contractors and subcontractors performing work on public improvement projects receive payment for properly completed work. *See* SFL § 137; *see also Toporoff Eng'rs, P.C. v. Fireman's Fund Ins. Co.*, 371 F.3d 105, 107 (2d Cir. 2004).

Specifically, SFL § 137(3) provides:

> Every person who *has furnished labor or material*, to the contractor or to a subcontractor of the contractor, in the prosecution of the work provided for in the contract and who *has not been paid in full* therefor before the expiration of a period of ninety days after the day on which the last of the labor was performed or material was furnished by him for which the claim is made, shall have the *right to sue on such payment bond* in his own name for the amount, or the balance thereof, unpaid at the time of commencement of the action; provided, however, that a person having a direct contractual relationship with a subcontractor of the contractor furnishing the payment bond but no contractual relationship express or implied with such contractor shall not have a right of action upon the bond unless he shall have given written notice to such contractor within one hundred twenty days from the date on which the last of the labor was performed or the last of the material was furnished, for which his claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or for whom the labor was performed.

SFL § 137(3) (McKinney's 2025) (emphasis added).

Applying the foregoing statute, a plaintiff seeking payment under a payment bond must establish the following elements: (1) a contractual relationship with either the contractor who furnished the payment bond or a subcontractor of that contractor; (2) proper performance of work in accordance with the plaintiff's contractual obligations; (3) nonpayment in full for the work performed under the contract; and (4) if the plaintiff lacks a direct contractual relationship with the

3

contractor, timely notice of the claim within one hundred twenty (120) days of the plaintiff's last date of work on the project. *Id*.

As explained *infra*, Plaintiff has met all the requirements of SFL § 137(3) and should therefore be able to obtain payment of the amount of $1,123,106.53 from Defendant under the Payment Bond.

### A. A Pre-requisite to a Payment Bond Claim under SFL § 137(3): the Existence of the Payment Bond

Preliminarily, there is no genuine dispute as to the existence of a payment bond issued by Defendant, which permits Plaintiff to pursue a claim under SFL § 137(3). Indeed, on or about February 13, 2024, Defendant issued a payment bond no. BOHNSU 0836336 naming ECG as principal and Defendant as surety in the amount of twenty-one million, seven hundred and fourteen thousand, five hundred dollars and zero cents ($21,714,500.00) (the "Payment Bond"), for a contract with the New York Olympic Regional Development Authority ("ORDA") known as Belleayre Ski Center Discovery Lodge and Overlook Lodge Improvements and located at 181 Galli Curci Road, Highmount, New York 12441 (the "Project") dated February 13, 2024 (the "General Contract"). *See* Wallace Aff. ¶¶ 5-6. Critically, the Payment Bond provides that Defendant agreed to bind itself and assume joint and several liability with ECG for the General Contract. *See id*. ¶ 7.

There is therefore a payment bond which permits Plaintiff to pursue a claim under SPL § 137(3).

### B. The Existence of a Contractual Relationship between Plaintiff and ECG, Principal on the Payment Bond

Similarly, it is undisputed that Plaintiff entered into a subcontract for the Project with ECG, the general contractor and principal of the Payment Bond.

4

As stated above, in order for a claimant to successfully bring a claim against the payment bond, it must prove the existence of a contractual relationship with either the contractor, principal of the payment bond, or with the subcontractor of said contractor. *See* SFL § 137(3). In this regard, Plaintiff does not need to be a party to the Payment Bond to sue the surety for payment. *Underpinning*, 726 F. Supp. 2d at 342; *see also Clifford F. MacEvoy Co. v. U.S. for Use & Benefit of Calvin Tomkins Co.*, 322 U.S. 102, 107 (1944).

On or about August 28, 2024, it is undisputed that Plaintiff entered into a trade contract with ECG, under which Plaintiff agreed to perform professional construction services on the construction project that is the subject of the General Contract between ORDA and ECG (the "Project"), for an amount of five million fifty thousand dollars and zero cents ($5,050,000.00), exclusive of change orders (the "Subcontract"). *See* Wallace Aff. ¶¶ 8-9. Additionally, Plaintiff issued six (6) change orders, all approved by ECG, for a total amount of three hundred eighty thousand, six hundred and ninety-nine dollars and eight cents ($380,699.08). *See id.* ¶ 10.

Clearly, Plaintiff has established the existence of a contractual relationship with the principal of the Payment Bond.

C. **Plaintiff Properly Performed its Scope of Work for the Project Pursuant to the Subcontract**

Plaintiff's performance under the Subcontract is undisputed. Pursuant to the Subcontract, Plaintiff was required to provide carpentry and masonry work for the Project. *See* Wallace Aff. ¶ 9. Plaintiff fulfilled its contractual obligations in accordance with the highest standards of workmanship, as required by the Subcontract. *See id.* ¶ 11. Accordingly, and in compliance with the Subcontract, Plaintiff submitted two (2) applications for payment totaling $1,027,946.63, plus $95,159.90 withheld as retainage, for the work performed, along with payroll records for its laborers on the Project. *Id*.

Plaintiff is entitled to $1,123,106.53, inclusive of retainage pursuant to the Subcontract. *See id*. at **Exhibit 2**. Section 13.3 of the ECG - CDCD Subcontract states the following:

> Should this Trade Contract ultimately be terminated as a result of the Prime Contract's termination or takeover, the Trade Contractor shall still be entitled to payment for all completed and accepted work, reasonable demobilization costs and any additional expenses directly incurred due to the termination [which] … shall not exceed the full value of this Trade Contract, ensuring the Trade Contractor incurs no loss due to the cancellation or reassignment of the Prime Contract. *See id*. at **Exhibit 2** at § 13.3.

On or about October 28, 2024, ORDA terminated ECG for the Project. *See id*. ¶ 20. As resolution of Plaintiff's entitlement to payment on the Payment Bond will constitute Plaintiff's final payment post-termination of ECG by ORDA, Plaintiff is entitled to the retainage which it has earned and which had been withheld from its applications for payment throughout the course of the Project. *See id*. ¶ 22; *see also id.*, at **Exhibit 4**. Thus, the total Plaintiff is due on the Payment Bond is $1,123,106.53, the sum of $1,027,946.63 and $95,159.90 (retainage). *See id*. ¶ 26.

Conversely, and contrary to what Defendant appears to suggest in its Answer, Plaintiff never received any complaints regarding alleged defective work or breach of the Subcontract from ECG, Defendant, or the owner ORDA. *Id*. ¶ 12. In fact, on or about October 14, 2024, Plaintiff received a letter from ECG acknowledging that its work on the Project was satisfactory and adhered to all the contractual provisions of the Subcontract. *Id*. ¶¶ 13-14. Furthermore, Plaintiff never received any notices of default or cure from these entities. *Id*. ¶ 12. Absent any complaints, notices to cure etc., it is undisputed that Plaintiff complied with the Subcontract. *Id*. ¶ 15. Moreover, given Defendant's failure to assert any defective work attributable to Plaintiff, Plaintiff is entitled to the full amount requested herein—$1,123,106.53. *See, e.g.*, *Underpinning*, 726 F. Supp. 2d at 343.

   D. **Plaintiff Has Not Received Any Payment for Work Performed for ECG on the Project under the Subcontract for More Than Ninety Days Since its Last Day of Work**

Pursuant to the Subcontract, Plaintiff submitted two (2) applications for payment to ECG, totaling $1,027,946.63, plus $95,159.90 withheld as retainage ($1,123.106.53), on September 30, 2024, and October 31, 2024. *See* Wallace Affidavit at ¶ 11. It is uncontested that these applications were neither disputed nor rejected. *Id*. ¶ 12. In fact, ECG confirmed that Plaintiff's work on the Project was very satisfactory and fully complied with the contractual provisions of the Subcontract. *Id*. ¶¶ 13-14.

Nevertheless, despite completing the work and submitting the applications for payment, Plaintiff has not received any payment for the Project. *Id*. ¶ 15. As of today, more than five (5) months have passed since payment became due, satisfying, without genuine doubt, the statutory minimum waiting period of three (3) months of SFL §137(3).

   E. **Although Plaintiff is Not Required to Provide Notice Due to its Direct Contractual Relationship with ECG, Plaintiff Nonetheless Properly Submitted Notice of its $1,123,106.53 Claim to Defendant within One Hundred Twenty Days of its Last Day of Work**

As explicitly stated in SFL §137(3), a claimant seeking payment under a payment bond who does not have a direct contractual relationship with the contractor, the principal on the bond, must provide notice within one hundred twenty (120) days of the claimant's last date of work on the project. If required, such notice must state with substantial accuracy the amount claimed and the name of the party to whom the materials were supplied or for whom the labor was performed. *See* SFL §137(3).

Here, it is undisputed that Plaintiff has a direct contractual relationship with ECG, the principal on the Payment Bond, and is therefore not required to provide notice.

Nevertheless, despite not being required to do so, Plaintiff submitted notice of the outstanding payment of $1,123,106.53 to both ECG and Harco on or about November 26, 2024, within the required one hundred twenty (120) days of its last day of work on the Project. *See* Wallace Aff. ¶ 16. Notably, Plaintiff's notice informed Defendant of the amount owed by ECG to Plaintiff and Plaintiff's intent to seek recovery under the Payment Bond for the Project. *Id*. Accordingly, Plaintiff fully complied with the requirements of New York State Finance Law and is therefore entitled to recover under the Payment Bond.

## POINT II
### PURSUANT TO SFL § 137(4)(c) PLAINTIFF IS ENTITLED TO REASONABLE ATTORNEYS' FEES

Because there is no genuine dispute of material fact regarding Plaintiff's entitlement to request payment of $1,123,106.53 from Defendant under the Payment Bond, Plaintiff is also entitled to recover attorneys' fees incurred in this litigation. *Rojac Co. v. U.S. Fid. & Guar. Co.*, No. 94-CV-1604 (FJS), 1998 WL 276174, at *16 (N.D.N.Y. May 26, 1998), *amended*, No. 94-CV-1604 (FJS), 1998 WL 385472 (N.D.N.Y. July 7, 1998), and *aff'd in part, vacated in part sub nom. R.W. Granger & Sons, Inc. v. Rojac Co.*, 182 F.3d 901 (2d Cir. 1999).

SFL § 137(4)(c) specifically provides:

> In any action on a payment bond furnished pursuant to this section, any judgment in favor of a subcontractor or material supplier may include provision for the payment of interest upon the amount recovered from the date when demand for payment was made pursuant to the labor and material payment bond and provided further that the *court may determine and award reasonable attorney's fee* to either party to such action when, upon reviewing the entire record, it appears that either the original claim or the defense interposed to such claim is without substantial basis in fact or law.

SFL § 137(4)(c) (McKinney's 2025) (emphasis added).

8

Plaintiff respectfully requests an award in an amount in excess of $30,000.00 in attorneys' fees incurred in prosecuting this action but defers to the discretion of this Honorable Court. Additionally, should the Court grant reasonable attorneys' fees to Plaintiff but require further information to determine the appropriate amount, Plaintiff is prepared to submit an affidavit detailing a breakdown of the attorneys' fees borne by Plaintiff in this litigation.

## CONCLUSION

For the foregoing reasons, Plaintiff Creative Direction Construction & Design, LLC is entitled to summary judgment, and Defendant Harco National Insurance Company should be ordered to pay Plaintiff $1,123,106.53 under the Payment Bond, along with an amount in excess of $30,000.00 in attorney's fees.

Dated: Port Washington, New York
April 17, 2025

**GLASSBERG & ASSOCIATES, LLC**

By: _____
Steven Glassberg, Esq. (SG2480)
*Attorneys for Plaintiff*
Creative Direction
Construction & Design, LLC
8 Haven Avenue, Suite 215
Port Washington, New York 11050
Tel: (516) 767-6711

TO:   Adam P. Friedman, Esq. (510050)
      CHIESA SHAHINIAN & GIANTOMASI PC

9

*Attorneys for Defendant*
Harco National Insurance Company
11 Times Square, 34th Floor
New York, New York 10036
Tel: (212) 973-0572