UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CREATIVE DIRECTION CONSTRUCTION & DESIGN, LLC,

Plaintiff,

- against -

HARCO NATIONAL INSURANCE COMPANY,

Defendant.
-----------------------------------------------------------X

**CERTIFICATION**

Docket No.: 25-cv-179 (FJS/DJS)

**KYLE P. MURPHY,** a resident of the United States, certifies as follows:

1. I am employed as Vice President, Claims Counsel, by IAT Insurance Group, Inc. In this capacity, I am responsible for claims against bonds that IAT's affiliate, defendant Harco National Insurance Company, executed, as surety, on behalf of Empire Core Group, LLC. I am fully and personally familiar with the matters set forth below. I submit this Certification in opposition Plaintiff's motion for summary judgment.

2. In February 2024, Empire Core entered into a contract with the New York State Olympic Regional Development Authority ("ORDA") to perform certain construction work at the Belleayre Mountain Ski Center in Highmount, New York (the "Contract" and the "Project", respectively).

3. Harco, as surety, provided the Performance Bond and the Labor and Material Payment Bond on behalf of Empire Core, as principal, in connection with the Project. A copy of the Payment Bond is attached as Exhibit 1 to the Affidavit of Andre Wallace in support of Plaintiff's motion.

4. As surety, during the relevant times, Harco did not perform any construction work and did not maintain a presence on the Project site.

5. I understand that Plaintiff claims that Empire Core subcontracted a portion of its work on the Project to Plaintiff on (or about) August 28, 2024.

6. A mere two months later – on October 28, 2024 – ORDA declared Empire Core to be in default and terminated the Contract for cause. Attached as Exhibit 1 is ORDA's letter to Empire Core dated October 28, 2024, declaring Empire Core to be in default and terminating the Contract for cause.

7. ORDA's default letter states that its decision to declare Empire Core to be in default and to terminate the Contract was premised upon twelve deficiencies in Empire Core's performance, including "Lack of Contract supervision", "Ongoing issues with quality control and poor/inadequate workmanship", and "Lack of adherence to Contract specifications, necessitating work to be redone" (Exhibit 1 at 5).

8. When ORDA declared Empire Core to be in default and terminated the Contract, it demanded that Harco complete the Contract pursuant to Harco's obligations under the Performance Bond. Attached as Exhibit 2 is a copy of ORDA's letter to Harco dated October 28, 2024 (without the enclosures).

9. Harco and ORDA since have entered into a "Takeover Agreement" pursuant to which Harco assumed responsibility to complete the Contract, pursuant to the Takeover Agreement's terms and conditions (Exhibit 3).

10. On (or about) March 27, 2025, Harco retained Butler Construction Group, Inc., as the contractor to complete the Contract.

11. Butler is investigating and identifying the work performed by Empire Core and its subcontractors that is defective, inadequate, or that otherwise needs to be corrected or redone.

12. This investigation is in its early stages.

13. To date, this investigation has revealed various aspects of Plaintiff's work that are defective and that will require remediation.

14. Specifically, so far:

- the cold form metal framing installed by Plaintiff was installed incorrectly and, per ORDA's design professional, will require removal and replacement;
- door openings in the kitchen area are too small and will require replacement for door frames; and
- the metal grid for the drop ceiling in the kitchen requires replacement because Plaintiff installed a white grid while the drawings call for a black grid.

15. In addition to the above, an e-mail from ORDA dated November 1, 2024 (attached as Exhibit 4, without attachment), refers to the need to perform repairs to the roof, explaining that "[t]he repair is needed on account of the work performed by Empire Core."

16. Plaintiff's Subcontract with Empire Core reflects that its scope of work included roof work (Wallace Affidavit, Exhibit 2 (ECF Doc. No. 10-5) at 29).

17. Since ORDA terminated Empire Core for cause for reasons that include the performance of defective work, Harco expects that additional defective work that Plaintiff performed will be discovered as Butler continues to review the work in place.

18. Harco does not know the extent to which ORDA already has determined that other aspects of Plaintiff's work are defective, not in compliance with the plans and specifications, or otherwise not acceptable.

19. In fact, Harco is not certain what work Plaintiff actually performed (as opposed to work performed by Empire Core). The Subcontract reflects that Empire Core subcontracted a broad scope of its work to Plaintiff. *See id.*

20. The fact that ORDA terminated Empire Core prior to the date of Plaintiff's second payment requisition (signed October 31, 2024) and shortly after the date of Plaintiff's first payment requisition (signed September 30, 2024) calls into question the amount to which Plaintiff may be entitled for work performed on the Project (*see* Wallace Affidavit, Exhibit 4 (ECF Doc. No. 10-7).

21. According to a letter dated October 21, 2024, from Empire Core to ORDA (attached as Exhibit 5), Empire Core's payment requisition for the period ending September 30, 2024, was in the original amount of $2,790,108.76, which ORDA reduced to $1,421,314.51.

22. Harco does not know whether ORDA reduced this invoice because of any complaints or issues with Plaintiff's work, and requires discovery to investigate this issue.

23. Harco understands that ORDA did not pay Empire Core for either its payment requisition for the period ending September 30, 2024, or for work performed between October 1, 2024, and October 31, 2024.

24. Paragraph 2.3 of the Subcontract conditions Empire Core's obligation to pay any invoice submitted by Plaintiff upon receipt of payment therefor from ORDA.

25. In addition, paragraph 2.3(b) of the Subcontract appears to prevent Plaintiff from asserting any claim against Empire Core for amounts due for work performed except to the extent that Empire Core received payment therefor from ORDA as, according to paragraph 2.3(a), Plaintiff and Empire Core agreed that Empire Core is acting as agent of ORDA.

26. If Empire Core did not receive payment from ORDA for work performed by Plaintiff and therefore is not obligated to pay Plaintiff therefor, then Plaintiff cannot recover from the Payment Bond, as the liability of a surety (Harco) cannot exceed that of its principal (Empire Core).

27. Harco requires discovery as to whether Empire Core was acting as agent of ORDA relative to the Subcontract and whether Empire Core is or is not obligated to pay Plaintiff.

28. Harco also requires discovery as to the extent to which Empire Core received payment from ORDA for work performed by Plaintiff.

29. Paragraph 2.4 of the Subcontract indicates that payment to Plaintiff is conditioned upon acceptance of the work by ORDA and its architect.

30. The fact that ORDA terminated the Contract for cause indicates that ORDA did not accept the work performed by Plaintiff.

31. Harco requires discovery to determine whether ORDA or its architect ever accepted any of the work that is the subject of Plaintiff's claim.

32. The timesheets that are attached as Exhibit 5 to the Wallace Affidavit (ECF Doc. No. 10-8) indicate that Plaintiff had five men on site on September 25, 2024, each of whom purportedly worked 8 hours.

33. According to an e-mail from ORDA's construction manager to Empire Core sent on September 25, 2024, at 12:59 PM (attached as Exhibit 6) – which Empire Core provided to Harco in support of its claim that ORDA's termination of the Contract for cause was not justified – Plaintiff did not have any men on site as of that time on September 25, 2024.

34. Empire Core's response (the green text, responding to the red text) does not appear to dispute that Plaintiff did not have any men on site.

35. Harco requires discovery as to the veracity and legitimacy of Plaintiff's timesheets and other supporting documentation.

36. Paragraph 2.2 of the Subcontract provides that, within 10 days of the date of the Subcontract, Plaintiff was to divide its subcontract price (of $5,050,000.00) among "designated portions of the Work", which Empire Core could adjust.

37. Harco requires discovery to ascertain whether the charges that are the subject of Plaintiff's claim correspond to these apportioned values.

38. Paragraph 3.8 of the Subcontract obligates Plaintiff for damages resulting from delay in the work for which Plaintiff was responsible.

39. As reflected in ORDA's declaration of default letter (Exhibit 1), another basis of the default and ORDA's termination of the Contract for cause was delay.

40. Harco requires discovery to ascertain the extent to which Plaintiff is responsible for such delay and the damages resulting therefrom.

41. The letter from Empire Core to Plaintiff dated October 14, 2024 (Wallace Affidavit, Exhibit 6 (ECF Doc. No. 10-9) – dated two weeks before ORDA terminated the Contract for cause – is suspicious.

42. ORDA already had placed Empire Core on notice of a potential default twice – by letter dated July 16, 2024 (attached as Exhibit 7, without enclosures), and by letter dated September 9, 2024 (attached as Exhibit 8, without enclosures).

43. The second letter (dated September 9) was sent a week after Plaintiff had begun work on the Project, according to the timesheets attached to the Wallace Affidavit as Exhibit 5.

44. ORDA's September 9 letter noted a continued "lack of progress by Empire Core Group LLC".

45. By October 28 – by which time, Plaintiff had been performing work on the Project for two months – performance of Empire Core's scope of work had deteriorated further such that ORDA elected to declare a default and terminate the Contract.

46. Under these circumstances, the fact that Plaintiff's motion for summary judgment relies upon a letter from Empire Core dated just two weeks before ORDA's default declaration, stating such effusive praise of Plaintiff's work, requires investigation.

47. Harco had not seen this letter until Plaintiff filed its summary judgment motion.

48. Attached as Exhibit 9 is the "Proof of Claim" that Plaintiff supplied to Harco in support of its claim against the Payment Bond (without attachments).

49. As reflected above, there are a number of issues that affect Harco's liability to Plaintiff (if any) as to which Harco requires discovery, requiring the denial of Plaintiff's premature motion for summary judgment, filed before any discovery has been conducted.

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct. Executed on May 22, 2025.

KYLE P. MURPHY