# TAKEOVER AGREEMENT

THIS TAKEOVER AGREEMENT is made and entered into this __ day of March, 2025 (the "Execution Date") by and between Harco National Insurance Company ("Surety") and the New York State Olympic Regional Development Authority ("Owner" and, with Surety, the "Parties", with each a "Party").

WHEREAS, Empire Core Group, LLC ("Former Contractor"), and Owner entered into an agreement dated February 13, 2024 (the "Original Contract"), for certain construction work on the Discovery Lodge and Overlook Lodge at the Belleayre Mountain Ski Center in Pine Hill, New York (the "Project"), as defined in Article 1 of the Original Contract (the "Work");

WHEREAS, in connection with the Original Contract, Surety (as surety) and Former Contractor (as principal) executed Performance Bond No. BOHNSU 0836335, in favor of Owner (as obligee), in the penal sum of $21,714,500.00 (the "Performance Bond"), and a Labor and Material Payment Bond bearing the same bond number and in the same penal sum amount (the "Payment Bond" and, with the Performance Bond, the "Bonds");

WHEREAS, by letter dated October 28, 2024, Owner terminated Former Contractor's right to proceed with performance of the Original Contract for cause and so advised Surety;

WHEREAS, by letter of the same date, Owner notified Surety of its termination of Former Contractor for cause and demanded that Surety commence the required work within forty-five (45) days of Surety's receipt of Owner's letter as provided in the Original Contract and the Performance Bond;

WHEREAS, after negotiations, the Parties wish to compromise their various claims and disputes relating to the Project and the Bonds, to the fullest extent possible, on the terms and conditions stated below;

NOW, THEREFORE, in consideration of the agreements and undertakings hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties agree as follows:

1. Subject to the terms and conditions below, the Surety shall undertake to cause the performance and completion of the Work. Owner acknowledges that, by its execution of this Takeover Agreement and in causing the performance and completion of the Work, Surety is acting in its capacity as surety of Former Contractor and not as the completing contractor, and that Surety is not assuming or agreeing to perform any obligations or liabilities beyond those set forth in the Original Contract and the Bonds. Except as otherwise provided herein, Surety is entitled to all right, title, and interest of Former Contractor in and to the Original Contract in all respects, as if Surety was the original party to the Original Contract; provided, however, that Surety waives (a) the right

to assert that Owner's termination of Former Contractor was wrongful or improper, (b) any and all affirmative claims or causes against Owner that are premised upon the allegation that Owner's termination of Former Contractor was without justification or otherwise wrongful or improper, and (c) any claim that the Owner's demand on the surety to perform under the Performance bond was wrongful or improper. After the effective date of this Takeover Agreement, the term "Contractor", as used in the Original Contract, shall be deemed to refer to Surety rather than to the Former Contractor as appropriate to be consistent with the terms and conditions hereof.

2. Owner acknowledges that the Surety will subcontract the performance of the Work to Butler Construction Group ("Completion Contractor"). Surety may satisfy the insurance obligations required by the Original Contract by providing evidence of the required insurance coverages carried by Completion Contractor, with Surety being named as an additional insured of such policies.

3. As of the date of this Agreement:

(a) The original price of the Original Contract was $21,714,500.00;

(b) There were no change orders that increased or decreased the original price;

(c) As of the date of termination, Owner had paid Former Contractor the sum of $5,933,320.11;

(d) Owner is holding the sum of $312,280.01 as retainage, pursuant to the Original Contract;

(e) The remaining balance of the price of the Original Contract is $15,781,179.88, subject to any Owner offsets or deducts as provided in paragraph 9 below (the "Contract Balance").

(f) As of the date of the Execution Date, Owner represents and warrants that, according to the records available to it, the Contract Balance stated above is accurate. Surety reserves the right to verify the Contract Balance. Surety's sole remedy against Owner for breach of this representation and warranty is reformation of the Contract Balance to the proper amount.

(g) The Contract Balance shall be increased or decreased, as appropriate, as a result of any pending change orders to the Original Contract submitted by Former Contractor and/or Owner, as a result of any other proper adjustments thereto after the Execution Date, pursuant to the Original Contract, and/or as provided in paragraph 9 below.

4. Subject to the provisions of paragraph 9 below, the Contract Balance will be dedicated to and applied solely to Surety's performance of the Original Contract pursuant hereto and Owner shall pay the Contract Balance (as it may be modified pursuant hereto) to Surety, as the work progresses, in the manner provided in the Original Contract. No payment shall be delayed by reason of any slow down or cessation of work that occurred prior to the date that Notice to Proceed is provided to the Completion Contractor.

5. Surety's obligation hereunder and otherwise under the Performance Bond is limited to, and shall not exceed under any circumstance, the Performance Bond's penal sum. Should the entirety of the Contract Balance (as it may be modified pursuant hereto) be paid to Surety prior to Surety's completion of the Work, Surety shall spend its own funds as may be necessary to pay for completion of the Work by the Completion Contractor. All such payments shall be credited against and shall reduce the remaining amount of the Performance Bond's penal sum. Nothing in this Takeover Agreement constitutes a waiver of the penal sum limitation or an increase in the liability of Surety under either of the Bonds.

6. Surety shall substantially complete the Work relating to Discovery Lodge on or before October 15, 2025 (the "Discovery Lodge Substantial Completion Date"); provided, however, that the Discovery Lodge kitchen and cafeteria space shall be substantially completed on or before May 23, 2025, and Surety will endeavor, in consultation with Owner, to have the second floor of the Discovery Lodge usable and occupiable on or before June 15, 2025. Surety is hereby granted a non-compensatory time extension from the completion date in the Original Contract solely with respect to the Discovery Lodge until the Discovery Lodge Substantial Completion Date. As consideration for the non-compensatory time extension, Surety, for itself and on behalf of the Former Contractor, hereby waives any affirmative claim against ORDA for an additional time extension or for damages as a result of any delays that may have been caused by Owner, through the Execution Date. The assessment of liquidated damages against Surety, as provided in the Original Contract with respect to the Discovery Lodge, may begin on the day after the Discovery Lodge Substantial Completion Date. The calculation and assessment of any such liquidated damages shall include the recognition of all excusable delays. Surety shall complete the Work relating to Overlook Lodge on or before the dates set forth in the Original Contract. This paragraph does not affect the Owner's right to assert liquidated damages relative to Overlook Lodge as provided in the Original Contract.

7. Surety and Completion Contractor shall have the right to use, without charge, any of the equipment, materials, and appurtenances furnished or supplied by the Former Contractor which are stored on or about the premises of the Project site and all materials that may have been fabricated for use in connection with the Original Contract, irrespective of whether such materials are currently located at the site of the Project.

8. Surety shall be represented at the Project by the Completion Contractor. Surety shall authorize, in writing, an individual with Completion Contractor to be its representative (the "Authorized Individual") for the purposes of this paragraph. The Authorized Individual will represent the Surety in dealing with Owner on day-to-day construction issues.

(a) The Authorized Individual shall have the authority to negotiate and sign change orders on behalf of Surety without Surety's prior written approval, provided the amount of the change order does not exceed $10,000.00 and Completion Contractor is given additional time to perform the work that is the subject of the Change Order. If the Change Order exceeds $10,000.00 or no additional time is given to Completion Contractor to perform the work that is the subject of the Change Order, then the change order must be executed by Surety (not by the Authorized Individual) to be valid and enforceable. If the total of all approved change orders, after the Execution Date, exceeds $50,000.00, then Surety (not the Authorized Individual) must execute all further change orders for such change orders to be valid and enforceable. The Authorized Individual is not authorized to negotiate deductive change orders, credits, backcharges, or net deductions from the Original Contract or from the Contract Balance without Surety's prior written approval. The Authorized Individual is authorized to negotiate agreements concerning warranty work or latent defect in the work performed by Former Contractor, but such agreements must be executed by Surety (not by the Authorized Individual) to be valid and enforceable.

(b) Surety hereby designates the Authorized Individual to prepare and process pay requisitions. Payments from Owner shall be made by wire or ACH transfer pursuant to wire/account information to be provided separately by Surety.

9. Owner alleges to have incurred damages as a result of Former Contractor's breach of the Original Contract that are recoverable from Surety pursuant to the Performance Bond. Owner reserves its right to seek damages from Surety pursuant to the Original Contract and the Performance Bond (a) as are listed in Exhibit A, totaling $945,045.61, and (b) damages arising from claims from the other Prime Contractors on the Project, work performed by or on behalf of Owner, additional amounts to be paid to the Project designer of record, construction manager, and professional subconsultants. All damages submitted by Owner to Surety shall be reviewed by Surety within thirty (30) days of Surety's receipt of the damages and Surety shall be obligated to notify Owner, in writing, of any objections to the damages within said thirty-day period. As to each separate claims for damages, a notice of objection shall specify the contractual and/or legal basis for objection. Eash separate claim for damages which is not objected to by Surety within said thirty-day period, shall be deemed accepted by Surety. The value of all damages accepted by Surety shall reduce the Contract Balance. Nothing in this paragraph shall preclude, limit, or otherwise affect Owner's right to assess liquidated damages as provided in paragraph 6 of this Agreement.

10. Surety hereby waives all defenses that it has or could have to Owner's demand that Surety complete the Work, including (but not limited to) that Owner's termination of Former Contractor was wrongful or improper or that Owner did not satisfy all conditions precedent to the Surety's obligation under the Performance Bond. The Surety reserves, and does not waive, any and all other defense(s) and setoffs to Owner's claims of damages as described in paragraph 9(b), relating to (alleged) delay by Owner in terminating Former Contractor, delays for which Owner is (allegedly) responsible, or that Former Contractor and/or Surety otherwise are not liable for or responsible for the damage claimed. In addition, nothing in this agreement waives, releases, or otherwise affects Surety's rights and claims against Former Contractor and/or the Indemnitees under the Agreement of Indemnity that Former Contractor (and others) executed in its favor.

11. Because Owner terminated Former Contractor for cause, there are no contract funds that are due or that can be or become due to Former Contractor. Notwithstanding the foregoing, Owner shall withhold from the Contract Balance the required amounts on account of any claims, liens, suits, or demands by any persons or entities who furnished (or who claim to have furnished) labor, equipment, and/or materials in connection with the Project as required by law. The Payment Bond remains in full force and effect, in accordance with its terms and provisions. Surety's liability under the Payment Bond is limited to, and shall not exceed under any circumstance, the penal sum of $21,714,500.00. All payments made by Surety pursuant to the Payment Bond shall be credited against and shall reduce the Payment Bond's penal sum. Nothing herein constitutes a waiver of the Payment Bond's penal sum or an increase in the liability of the Surety thereunder.

12. This Takeover Agreement is solely for the benefit of the Parties. There are no intended third-party beneficiaries hereof. The Parties do not intend to confer a benefit or enforceable rights hereunder upon anyone other than themselves. Nothing herein extends or increases the rights of any third-party claimants against the Payment Bond or the liability or obligations of Surety under the Bonds.

13. This Takeover Agreement constitutes the whole of the understanding, discussions, and agreement by and between the Parties. The Parties each acknowledge that there have been no oral, written, or other agreements of any kind as a condition precedent to or to induce the execution and delivery of this Takeover Agreement. Any written or oral discussions conducted prior to the Execution Date shall not, in any way, vary or alter the terms hereof.

14. This Takeover Agreement cannot be modified except by a writing signed by each of the Parties, expressly referring to the provision to which such instrument relates; except that a Party may change the name and address of its notice recipient(s) unilaterally in writing.

15. All notices and other communications given or made in connection with this Takeover Agreement shall be deemed to have been properly given or made if sent via both e-mail and overnight courier as provided below; however, notice via overnight courier shall not be necessary if the receiving Party or its counsel confirms receipt of notice sent by e-mail:

For Owner, to:

Edward Kowalewski, Jr., Assistant Counsel
New York State Olympic Regional Development Authority
37 Church Street
Lake Placid, New York 12946
ekowalewski@orda.org

With a copy to:

John P. Mastropietro, Esq.
Mastropietro Law Group, PLLC
63 Franklin Street
Saratoga Springs, New York 12866
jpm@mastrolgpllc.com

For Surety, to:

Kyle P. Murphy
Harco National Insurance Company
One Newark Center, 20th Floor
Newark, New Jersey 07102
kyle.murphy@iatinsurance.com

With a copy to:

Adam P. Friedman
Chiesa Shahinian & Giantomasi PC
11 Times Square, 34th Floor
New York, New York 10036
afriedman@csglaw.com.

The effective date of any notice shall be the earlier of (a) the date of confirmation (by any Party or its counsel) of receipt of the notice by e-mail or (b) one business day after the date the notice was provided to an overnight courier service for delivery to the receiving Party and its counsel.

16. This Takeover Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same Takeover Agreement.

Facsimile, electronic, and/or images of signatures shall have the same force and effect as original signatures.

17. This Takeover Agreement shall be binding upon the Parties and their respective successors and assigns.

18. This Takeover Agreement shall be governed and controlled by the laws of the State of New York. Any disputes between the Parties relative to this Takeover Agreement, the Bonds, and/or the Original Contract shall be resolved or determined pursuant to the laws of the State of New York in the Supreme Court of the State of New York in and for the County of Essex, irrespective of any conflict of laws principles or analysis.

19. This Takeover Agreement is effective as of the Execution Date.

20. In the event any provision contained in this Takeover Agreement shall be held to be invalid, illegal, or unenforceable in any respect by a court of competent jurisdiction, the validity, legality, and enforceability of the remaining provisions of this Takeover Agreement shall not in any way be affected or impaired thereby, such invalidity shall not affect any other provision of this Takeover Agreement, and this Takeover Agreement shall be construed as if such unenforceable provision had never been contained herein, unless the unenforceable provision is material or necessary to this Takeover Agreement.

21. In the event a provision of this Takeover Agreement is inconsistent with or contradicts the Original Contract or the Performance Bond, the terms of this Takeover Agreement shall govern and control. Any capitalized term not defined in this Takeover Agreement shall be ascribed the meaning set forth in the Original Contract.

22. This Takeover Agreement is the product of the Parties' joint drafting effort. As such, it shall be construed without regard to any presumption or other rule requiring construction against the drafter.

IN WITNESS WHEREOF, the Parties have executed this Takeover Agreement on the Execution Date, and each of the undersigned personally represents and warrants that he/she has the full right, power, and authority to execute this Takeover Agreement on behalf of the Party on whose behalf he/she is signing.

| NEW YORK STATE OLYMPIC REGIONAL DEVELOPMENT AUTHORITY | HARCO NATIONAL INSURANCE COMPANY |
|---|---|
| By: [signature] | By: Kyle P. Murphy |
| Ashley Walden<br>President & CEO | Kyle P. Murphy<br>Vice President, Claim Counsel |