UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CREATIVE DIRECTION CONSTRUCTION &
DESIGN, LLC,

      Plaintiff,

  - against -

HARCO NATIONAL INSURANCE COMPANY,

      Defendant.
------------------------------------------------------------X

**RESPONSE TO STATEMENT OF UNDISPUTED FACTS**

Docket No.: 25-cv-179 (FJS/DJS)

  The defendant, **HARCO NATIONAL INSURANCE COMPANY,** pursuant to Local Civil Rule 56.1, responds to Plaintiff's Statement of Material Facts as follows:

**The Belleayre Ski Center Discovery Lodge and Overlook Lodge Project**

  1. On February 13, 2024, Empire Core Group, LLC ("ECG") and Defendant Harco National Insurance Company ("Defendant" or "Harco") executed a payment bond no. BOHNSU 0836336 in the amount of twenty-one million, seven hundred and fourteen thousand, five hundred dollars and zero cents ($21,714,500.00) pursuant to which ECG was named principal and Defendant surety (the "Payment Bond"), for a construction project known as Belleayre Ski Center Discovery Lodge and Overlook Lodge Improvements and located at 181 Galli Curci Road, Highmount, New York 12441 (the "Project"). *See* Wallace Aff. ¶¶ 5-6; s*ee also id.*, at **Exhibit 1**.

  *Response:* Admitted.

  2. The Payment Bond specifically provides that ECG, as principal, and Defendant, as surety, agreed to be jointly and severally liable on the Payment Bond. *See id.*, at ¶ 7.

*Response:* Harco is unable to admit or deny the truth of this statement, as the meaning of "jointly and severally liable on the Payment Bond" is unclear. Harco admits that the Payment Bond says that Empire Core and Harco "bind [themselves], jointly and severally, firmly by" the terms and conditions of the Payment Bond.

3. On August 28, 2024, ECG subcontracted a portion of the work for the Project to Plaintiff pursuant to a Trade Contract (the "Subcontract"). *See* Wallace Aff. ¶ 8; *see also id.*, at **Exhibit 2.**

*Response:* Because Harco has not had the opportunity to discover information relevant to Plaintiff's motion, it can neither admit nor deny this paragraph.

4. Pursuant to the ECG-CDCD Subcontract, Plaintiff was to be paid five million, fifty thousand dollars and zero cents ($5,050,000.00) for carpentry and masonry work in connection with the Project. *See id.*; *see also id.*, at ¶ 9.

*Response:* Because Harco has not had the opportunity to discover information relevant to Plaintiff's motion, it can neither admit nor deny this paragraph.

5. Additionally, between September 16, 2024, and October 7, 2024, Plaintiff issued six (6) change orders for labor and materials provided for the Project, all of which were approved by ECG, totaling three hundred eighty thousand, six hundred and ninety-nine dollars and eight cents ($380,699.08). *See* Wallace Aff. ¶ 10; *see also id.*, at **Exhibit 3.**

*Response:* Because Harco has not had the opportunity to discover information relevant to Plaintiff's motion, it can neither admit nor deny this paragraph.

**CHIESA SHAHINIAN & GIANTOMASI PC** ▪ 11 Times Square, 34th Floor ▪ New York, New York 10036 ▪ (212) 973-0572

6. Pursuant to the ECG-CDCD Subcontract, Plaintiff fully satisfied its contractual obligations in accordance with the highest standards of workmanship. See Wallace Aff. ¶ 11. Accordingly, and in compliance with the ECG-CDCD Subcontract, Plaintiff submitted two (2) applications for payment, on September 30, 2024, and October 31, 2024, totaling $1,123,106.53 plus $95,159.90 withheld as retainage ($1,123.106.53), for the labor and materials provided for the Project, along with payroll records for its laborers on the Project. See Wallace Aff. ¶ 11; see also id., at Exhibits 4-5. See Wallace Aff. ¶ 11.

*Response:* Because Harco has not had the opportunity to discover information relevant to Plaintiff's motion, it can neither admit nor deny this paragraph.

7. None of Plaintiff's payment applications were timely disputed or rejected by ECG or ORDA, nor did Plaintiff receive any notices of default or cure from either entity. *Id.*, at ¶ 12.

*Response:* Because Harco has not had the opportunity to discover information relevant to Plaintiff's motion, it can neither admit nor deny this paragraph.

8. On October 14, 2024, Plaintiff received a letter from ECG acknowledging that Plaintiff's work on the Project was fully satisfactory and adhered to all contractual provisions. *See* Wallace Aff. ¶ 13; *see also id.*, at **Exhibit 6**.

*Response:* Because Harco has not had the opportunity to discover information relevant to Plaintiff's motion, it can neither admit nor deny this paragraph.

9. Notably, among the numerous praises of CDCD's labor and materials on the Project, ECG stated the following: "I wanted to take a moment to thank you for the

3

effort and quality of your work so far.  Your personal attention and presence in the field to help direct your manpower has been a great help."  *See* Wallace Aff. ¶ 14.

*Response:*     Harco admits that the letter attached as Exhibit 6 to the Wallace Affidavit contains the quoted language.

### Plaintiff's Claim on the Payment Bond

10.     On November 26, 2024, Plaintiff notified Harco of its outstanding balance of $1,123,106.53 and sought to recover the amount due under the Payment Bond, engaging in correspondence with Harco on this matter.  *See* Wallace Aff. ¶ 16; *see also id.*, at **Exhibit 7.**

*Response:*     Denied.

11.     Plaintiff's total balance was calculated with Plaintiff's two applications for payment.  *See* Wallace Aff. ¶ 11; *see also id.*, at **Exhibit 4**.

*Response:*     Because Harco has not had the opportunity to discover information relevant to Plaintiff's motion, it can neither admit nor deny this paragraph.

12.     Plaintiff's first application for payment is clearly in the amount of $780,091.63.  *See* Wallace Aff. at **Exhibit 4.**

*Response:*     Because Harco has not had the opportunity to discover information relevant to Plaintiff's motion, it can neither admit nor deny this paragraph.

13.     $41,057.45 was withheld as retainage from Plaintiff until Plaintiff substantially completed its scope of work pursuant to the ECG-CDCD Subcontract.  *See* Wallace Aff. ¶ 23; *see also id.*, at **Exhibit 4**; *see also* Wallace Aff. at **Exhibit 2** at § 20.17.

*Response:* Because Harco has not had the opportunity to discover information relevant to Plaintiff's motion, it can neither admit nor deny this paragraph.

14. Plaintiff's second application for payment is clearly in the amount of $1,082,049.08. *See* Wallace Aff. at **Exhibit 4.**

*Response:* Because Harco has not had the opportunity to discover information relevant to Plaintiff's motion, it can neither admit nor deny this paragraph.

15. $54,102.45 was withheld as retainage from Plaintiff until Plaintiff substantially completed its scope of work pursuant to the ECG - CDCD Subcontract. *See* Wallace Aff. ¶ 24; *see also id.,* at **Exhibit 4**; *see also* Wallace Aff. at **Exhibit 2** at § 20.17.

*Response:* Because Harco has not had the opportunity to discover information relevant to Plaintiff's motion, it can neither admit nor deny this paragraph.

16. Plaintiff is entitled to the amounts of its two applications for payment plus retainage because of operative portions of the ECG - CDCD Subcontract. *See* Wallace Aff. ¶ 26.

*Response:* This paragraph calls for a legal conclusion and is not a statement of fact.

17. Section 13.3 of the ECG-CDCD Subcontract states the following:

> Should this Trade Contract ultimately be terminated as a result of the Prime Contract's termination or takeover, the Trade Contractor shall still be entitled to payment for all completed and accepted work, reasonable demobilization costs and any additional expenses directly incurred due to the termination [which] ... shall not exceed the full value of this Trade Contract, ensuring the Trade Contractor incurs

5

>no loss due to the cancellation or reassignment of the Prime Contract.  *See* Wallace Aff. at **Exhibit 2** at § 13.3.

*Response:*   Harco admits that § 13.3 of the Subcontract contains the quoted language.

18.   On or about October 28, 2024, ORDA terminated ECG for the Project.  *See* Wallace Aff. ¶ 20.

*Response:*   Harco admits that, on October 28, 2024, ORDA declared ECG to be in default and terminated its contract for cause.

19.   As resolution of Plaintiff's entitlement to payment on the Payment Bond will constitute Plaintiff's final payment post-termination of ECF by ORDA, Plaintiff is entitled to the retainage which it has earned and which had been withheld from its applications (2) for payment throughout the course of the Project. *See* Wallace Aff. ¶ 22; *see also id.*, at **Exhibit 4.**

*Response:*   This paragraph calls for a legal conclusion and is not a statement of fact.

20.   Thus, the total Plaintiff is due on the Payment Bond is $1,123,106.53, the sum of $1,027,946.63 and $95,159.90 (retainage).  *See* Wallace Aff. ¶ 26.

*Response:*   This paragraph calls for a legal conclusion and is not a statement of fact.

21.   No prior action or proceeding has been brought at law or otherwise for the recovery of said sum, or any part thereof.  *See* Wallace Aff. ¶ 17.

*Response:*   Admitted.

22.     Plaintiff is currently due $1,123,106.53, plus interest thereon, for the labor performed, and materials furnished, and attorneys' fees in connection with the Project, although demand has been duly made by Plaintiff. *See* Wallace Aff. ¶ 27.

*Response:*     This paragraph calls for a legal conclusion and is not a statement of fact.

Dated: May 22, 2025

                                                   **CHIESA SHAHINIAN & GIANTOMASI PC**
Attorneys for Defendant
*Harco National Insurance Company*

By:     */s Adam P. Friedman*
        Adam P. Friedman

Bar Roll No.: 510050
11 Times Square, 34th Floor
New York, New York  10036
(212) 973-0572
afriedman@csglaw.com

7