UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CREATIVE DIRECTION CONSTRUCTION &
DESIGN, LLC,

                  **Plaintiff,**

    - against -                                              Docket No.: 25-cv-179 (FJS/DJS)

HARCO NATIONAL INSURANCE COMPANY,

                  **Defendant.**
-------------------------------------------------------------X


**HARCO NATIONAL INSURANCE COMPANY'S MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**


                                                **CHIESA SHAHINIAN & GIANTOMASI PC**
                                                11 Times Square, 34th Floor
                                                New York, New York  10036
                                                (212) 973-0572

                                                **Attorneys for Defendant**
                                                *Harco National Insurance Company*


**Of Counsel:**

**Adam P. Friedman**

## Table of Contents

*Page*

Table of Authorities ...................................................................................................ii

Preliminary Statement ................................................................................................1

Pertinent Facts and Procedural History .....................................................................2

Plaintiff should not be awarded summary judgment
where Harco has not had an opportunity to conduct any discovery ..........................7

Conclusion ................................................................................................................12

# Table of Authorities

**_Page_**

***Cases***

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ................................................. 9

*Carpenter v. Mohawk Valley Cmty. Coll.,* No. 18-cv-1268 (GLS/TWD),
2020 WL 1915144 (N.D.N.Y. Apr. 20, 2020) .......................................................... 11

*Croney v. Russell,* No. 23-CV-1188 (DNH/OJE),
2025 WL 1089520 (N.D.N.Y. Feb. 25, 2025),
*R&R adopted,* 2025 WL 854718 (N.D.N.Y. Mar. 19, 2025) ..................................... 7-8

*Crystalline H$_2$O, Inc. v. Orminski,* 105 F. Supp. 2d 3 (N.D.N.Y. 2000) ....................... 8

*Elliott v. Cartagena,* 84 F.4th 481 (2d Cir. 2023) .................................................... 1, 8

*MacKennan v. Am. Cas. Co. of Reading, Pa.,*
564 N.Y.S.2d 462 (1st Dept 1991) ........................................................................ 10

*Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292
(2d Cir.), *cert. denied,* 540 U.S. 823 (2003) ............................................................ 9

*Nat'l Life Ins. Co. v. Solomon,* 529 F.2d 59 (2d Cir. 1975) ......................................... 8

*Sloley v. Joyce,* No. 23-cv-01469 (AMN/TWD),
2025 WL 1032778 (W.D.N.Y. Feb. 5, 2025),
*R&R adopted,* 2025 WL 879932 (N.D.N.Y. Mar. 21, 2025) ......................................... 8

*Trebor Sportswear Co. v. Limited Stores, Inc.,* 865 F.2d 506 (2d Cir. 1989) .............. 8

*United States v. Seaboard Sur. Co.,* 817 F.2d 956 (2d Cir.),
*cert. denied,* 484 U.S. 855 (1987) ................................................................... 10-11

*Ward v. Rodriguez,* No. 22-CV-6497-FPG,
2025 WL 254493 (W.D.N.Y. Jan. 21, 2025) ....................................................... 11-12

*Page*

**Statutes and Rules**

Fed. R. Civ. P. 16 ................................................................................................... 11

Fed. R. Civ. P. 26(d)(1) ..................................................................................... 6, 11

Fed. R. Civ. P. 26(f) ............................................................................................. 11

Fed. R. Civ. P. 56(d) .................................................................................... 8, 9, 11

N.Y. State Fin. L. § 137 .......................................................................................... 2

**Preliminary Statement**

The Second Circuit has said that summary judgment before discovery is appropriate in only the "rarest of cases". *Elliott v. Cartagena*, 84 F.4th 481, 486 (2d Cir. 2023). This is not such a case, and Plaintiff's motion does not even attempt to argue otherwise.

Plaintiff's motion seeks summary judgment on its claim against a payment bond that the defendant, Harco National Insurance Company, provided, as surety, when there are significant questions about the legitimacy and merit of Plaintiff's claim and where the documentation necessary to address these questions is maintained by parties other than Harco. Harco do not know why the contractor has not paid Plaintiff, despite sending Plaintiff a letter that effusively praises Plaintiff's work. It does not know the extent of work that Plaintiff performed defectively, although the project's owner terminated the contractor for cause for reasons that include defective work and that certain elements of Plaintiff's work have been discovered to require replacement. It does not know the extent to which Plaintiff delayed the project, although another ground for the project owner's termination of the contractor was delay. The terms of the Subcontract between Plaintiff and the contractor indicate that Plaintiff may not even be entitled to payment from the contractor – and, of course, if the contractor (the payment bond's principal) is not obligated to pay Plaintiff, then Harco cannot be obligated to pay Plaintiff. All of this information is within the possession of other parties – Plaintiff, the contractor, and the project's owner.

There is neither reason nor basis to deprive Harco of its right to conduct the discovery that it needs to respond to Plaintiff's claim. Plaintiff's premature motion for summary judgment, made before an initial conference has been held and before Harco has had the opportunity to conduct any discovery, should be denied.

**Pertinent Facts and Procedural History**

In February 2024, Empire Core Group, LLC, entered into a contract with the New York State Olympic Regional Development Authority ("ORDA") to perform certain construction work at the Belleayre Mountain Ski Center in Highmount, New York (the "Contract" and the "Project", respectively). Harco, as surety, executed the Performance Bond and the Labor and Materials Payment Bond on behalf of Empire Core, as principal, in favor of ORDA, as obligee, in connection with the Project. The Payment Bond guarantees the payment of the subcontractors and suppliers who furnish labor or materials to Empire Core in furtherance of the Project for which Empire Core fails to pay, subject to the Payment Bond's terms and conditions and the terms of New York State Finance Law § 137. *See* Affidavit of Andre Wallace, Exhibit 1 (ECF Doc. No. 10-4).

According to Plaintiff, Empire Core subcontracted a portion of its work on the Project to Plaintiff on (or about) August 28, 2024. Wallace Affidavit (ECF Doc. No. 10-3), ¶ 8. The Subcontract between Empire Core and Plaintiff reflects that Empire Core subcontracted a broad scope of work to Plaintiff. Wallace Affidavit, Exhibit 2 (ECF Doc. No. 10-5), at 29 (hereinafter "Subcontract"). Two months later, ORDA declared

2

Empire Core to be in default and terminated the Contract for cause. Certification of Kyle P. Murphy, Exhibit 1. ORDA's default termination of Empire Core was premised upon a dozen factors and considerations, which included "Lack of Contract supervision", "Ongoing issues with quality control and poor/inadequate workmanship", and "Lack of adherence to Contract specifications, necessitating work to be redone". *Id.* at 5.

ORDA demanded that Harco complete the Contract pursuant to Harco's obligations under the Performance Bond. Murphy Certification, Exhibit 2. Having determined that ORDA likely satisfied the conditions precedent to Harco's obligations under the Performance Bond and that it therefore was obligated to complete the Contract, Harco entered into a "Takeover Agreement" with Harco, pursuant to which Harco assumed responsibility to complete the Contract, in accordance with the Takeover Agreement's terms and conditions. Murphy Certification, Exhibit 3. On (or about) March 27, 2025, Harco retained Butler Construction Group, Inc., as the replacement contractor to complete the Contract. Murphy Certification, ¶ 10.

After ORDA terminated Empire Core for cause, Plaintiff submitted a claim against the Payment Bond to Harco seeking payment of in excess of $1 million, which Plaintiff claims to be the amount due from Empire Core for work performed in furtherance of the Project. Why Empire Core has not paid Plaintiff – despite sending Plaintiff a letter two weeks before its termination effusively praising Plaintiff's work (Wallace Affidavit, Exhibit 6 (ECF Doc. No. 10-9)) (hereinafter "Empire Core Letter")) –

3

is unknown. Harco requires discovery of Empire Core to ascertain the basis for non-payment despite its purported satisfaction with Plaintiff's work.

The extent to which Plaintiff performed any of the defective work that provided a basis for ORDA's termination of the Contract for cause is unknown. To date, three aspects of defective work performed by Plaintiff have been identified. *See* Murphy Certification, ¶ 14. Since ORDA terminated Empire Core for cause for reasons that include the performance of defective work, Harco anticipates that additional defective work performed by Plaintiff will be discovered as Butler continues to complete the Project. Harco does not know the extent to which ORDA already has determined that Plaintiff's work was defective. Similarly, the extent to which Plaintiff is responsible for any of the delays that provided a basis for ORDA's termination of the Contract is unknown. Documentation pertaining to these issues would be in the possession of Plaintiff, Empire Core, and/or ORDA. Harco has very limited informaiton about defects in Plaintiff's work. Murphy Certification, ¶¶ 13-16. To the extent other work that Plaintiff performed is defective but not already known by ORDA, Butler would discover such defective work as its completion work continues. Harco also is not aware of the extent to which Plaintiff may have delayed the Project. Discovery of Plaintiff, Empire Core, and ORDA would allow Harco to obtain documentation relevant to these issues without having to wait for Butler to make its way through the entire Project.

Plaintiff's payment bond claim – and its motion – are based upon payment applications that Plaintiff submitted to Empire Core. According to the Subcontract

4

between Plaintiff and Empire Core, Empire Core is not obligated to issue payment unless ORDA and its architect have accepted the work. Subcontract, ¶ 2.4; *see also* ¶ 13.3 (describing Plaintiff's entitlement to payment after ORDA's termination of its contract with Empire Core to be "for all completed and accepted work"). Plaintiff's papers do not contain anything indicating that ORDA accepted or approved any of Plaintiff's work, and the fact that ORDA terminated Empire Core for cause precludes any such assumption. Paragraph 2.3(b) of the Subcontract appears to prevent Plaintiff from asserting a claim against Empire Core for work performed except to the extent that Empire Core received payment therefor from ORDA as, according to paragraph 2.3(a), Plaintiff and Empire Core agreed that Empire Core is acting as agent of ORDA.

On (or about) November 26, 2024, Plaintiff submitted a "Proof of Claim" and supporting documents to Harco seeking payment of $1,027,946.63. Murphy Certification, Exhibit 9. It commenced this action on February 7, 2025, against Harco only; for reasons that are unknown, Plaintiff did not sue Empire Core, the party that would have primary liability. Both its Complaint (ECF Doc. No. 1) and its Amended Complaint (ECF Doc. No. 5) seek $1,027,946.63 (exclusive of a claim for attorney's fees).

Plaintiff filed this motion for summary judgment on April 17, 2025, before the initial conference was to be held. The motion seeks judgment in the sum of $1,123,106.53, exclusive of interest and attorney's fees – nearly $100,000 more than sought in the Complaint. Plaintiff's motion does not explain the discrepancy or how it can obtain judgment in an amount greater than sought in the Amended Complaint. In

5

compliance with Rule 26(d)(1), Harco had yet to serve any document demands or interrogatories upon Plaintiff.  In violation of Rule 26(d)(1), Plaintiff served document demands and interrogatories upon Harco on March 24, 2025 (Friedman Certification, ¶ 6.  The service of the document demands (Friedman Certification, Exhibit A) and the Initial Disclosures that were served at the same time (Friedman Certification, Exhibit B) raises another issue, which involves the letter from Empire Core praising Plaintiff's performance, sent two weeks before the termination for cause.

In pending litigations, including an action commenced by Harco, Empire Core is represented by the law firm of Wilson & Chan.  Friedman Certification, ¶¶ 14, 15, and Exhibits E, F.  Harco understands that Wilson & Chan also is counsel for Plaintiff and for Plaintiff's principal, Mr. Wallace (Friedman Certification,  Exhibits C and D).  Presumably, Wilson & Chan declined to represent Plaintiff in this case because of a potential conflict (since Empire Core, as principal, owes an indemnity obligation to Harco, as surety, for any amounts due to Plaintiff).  Nevertheless, Plaintiff's Initial Disclosures state at the beginning that they are being provided by Plaintiff "by and through its attorney, WILSON & CHAN, LLP . . . ."  Friedman Certification, Exhibit B.  Plaintiff's document demand similarly requests the production of documents "at the law offices of Wilson & Chan LLP".  Friedman Certification, Exhibit A at 1.  At the least, there is the appearance of impropriety, raising questions about the veracity of the letter that Empire Core sent to Plaintiff two weeks before Empire Core was terminated for cause, effusively praising Plaintiff's performance despite knowing that a termination for cause was likely imminent (*see* Murphy Certification, Exhibits 7, 8).

6

A similar issue pertains to the timesheets that Plaintiff includes with its motion (Wallace Affidavit, Exhibit 5 (ECF Doc. No. 10-8)). The timesheet for September 25 reflects that Plaintiff had five men on the site that day, each of whom worked eight hours. Documentation that Empire Core provided to Harco in support of its position that ORDA's termination of the Contract for cause was wrongful included an e-mail chain from that date. In this chain is an e-mail from ORDA's construction manager (Ron O'Connor of Schoolhouse Construction Services) in which, in response to advice from Empire Core that Plaintiff would be "cold form framing on the main level with their own crew", Mr. O'Connor states that nobody from Plaintiff was on site that day. Empire Core's response does not dispute Mr. O'Connor's statement. (This e-mail chain is attached as Exhibit 6 to the Certification of Kyle P. Murphy.)[1]

These curious aspects of Plaintiff's claim demonstrate Harco's need for discovery regarding the legitimacy and propriety of its claim.

## Plaintiff should not be awarded summary judgment where Harco has not had an opportunity to conduct any discovery.

"Summary judgment is a drastic device and should not be granted when there are major factual contentions in dispute, particularly when, as here, one party has yet to exercise its opportunities for pretrial discovery." *Croney v. Russell*, No. 23-CV-1188 (DNH/OJE), 2025 WL 1089520, * 3 (N.D.N.Y. Feb. 25, 2025), *R&R adopted,* 2025 WL

---

[1] Harco understands that the black text is Empire Core's original advice; the red text is Mr. O'Connor's September 25 response; and the green text is Empire Core's response to Mr. O'Connor.

7

854718 (N.D.N.Y. Mar. 19, 2025) (quoting *Nat'l Life Ins. Co. v. Solomon,* 529 F.2d 59, 61 (2d Cir. 1975) (internal quotation marks and punctuation omitted)). "The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment" and "should not be 'railroaded' into his offer of proof in opposition to summary judgment." *Trebor Sportswear Co. v. Limited Stores, Inc.,* 865 F.2d 506, 511 (2d Cir. 1989) (citations and internal quotation marks omitted). Therefore, as stated at the outset of this Memorandum of Law, summary judgment before discovery is appropriate in only the "rarest of cases". *Elliott,* 84 F.4th at 486. Plaintiff's motion does not make any effort whatsoever to demonstrate "why this is one of the rarest of cases where summary judgment may be granted against a party who has not been afforded the opportunity to conduct discovery." *Sloley v. Joyce,* No. 23-cv-01469 (AMN/TWD), 2025 WL 1032778, *9 (W.D.N.Y. Feb. 5, 2025), *R&R adopted,* 2025 WL 879932 (N.D.N.Y. Mar. 21, 2025).

Thus, Rule 56(d) of the Federal Rules of Civil Procedure provides that a court, *inter alia,* may deny a motion for summary judgment where the nonmovant shows that it requires discovery to "present facts essential to justify its opposition" to the motion. "There is a critical difference, however, between cases where a litigant opposing a motion for summary judgment requests a stay of that motion to conduct *additional* discovery and cases where that same litigant opposes a motion for summary judgment on the ground that it is entitled to an opportunity to *commence* discovery with respect to Plaintiff's claims . . . ." *Crystalline H$_2$O, Inc. v. Orminski,* 105 F. Supp. 2d 3, 6-7 (N.D.N.Y. 2000). The Supreme Court has held that Rule 56(d) requires that summary

8

judgment be "refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n.5 (1986).

The accompanying Certifications of Kyle P. Murphy and Adam P. Friedman contain the information that Rule 56(d) requires: (1) "what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 303 (2d Cir.) (citation and internal quotation marks omitted), *cert. denied,* 540 U.S. 823 (2003). Specifically:

- Harco requires discovery of the extent to which ORDA accepted (or has not accepted) Plaintiff's work; relatedly, the extent to which ORDA found Plaintiff's work to be defective or otherwise not acceptable; and the damage resulting therefrom. Under the Subcontract, Plaintiff is not entitled to payment for work that ORDA did not accept it work and is not entitled to work that has to be repaired or replaced because it was defective or inconsistent with the plans and specifications. This information would be obtained through document demands and interrogatories to Plaintiff and subpoenas duces tecum to Empire Core and ORDA and, to the extent necessary, depositions of witnesses of each.

- Harco requires discovery of the extent to which Plaintiff delayed the work and the damage resulting therefrom. This information will be obtained through

9

document demands and interrogatories to Plaintiff and subpoenas duces tecum to Empire Core and ORDA, supplemented by depositions as necessary.

- Harco requires discovery of the reasons that ORDA reduced Empire Core's payment requisition(s) and whether such reductions pertained to work performed by Plaintiff. This information will be obtained through document demands and interrogatories to Plaintiff and subpoenas duces tecum to Empire Core and ORDA, supplemented by depositions as necessary.

- Harco requires discovery of the legitimacy and propriety of Plaintiff's claim, the accuracy of the timesheets upon which Plaintiff relies, the circumstances underlying the Empire Core Letter, the documentation that supports Plaintiff's effusive praise for Plaintiff's performance, the reason(s) Plaintiff has not paid Plaintiff, and Empire Core's involvement with this suit, either directly or through Wilson & Chan. This information again would be obtained through document demands and interrogatories to Plaintiff and a subpoena duces tecum to Empire Core, supplemented by depositions as appropriate.

Determining the extent of Empire Core's liability to Plaintiff (if any), of course, is critical to this case. As the party with secondary liability, the liability of a surety (Harco) cannot exceed the liability of the party with primarily liability, the principal (Empire Core). *See, e.g.,* MacKennan v. Am. Cas. Co. of Reading, Pa., 564 N.Y.S.2d 462, 463 (1st Dept 1991) ("A surety's liability is derived from the liability of the principal, and thus as a general rule, a surety's liability may not exceed that of the principal"); *see also* United States v. Seaboard Sur. Co., 817 F.2d 956, 962 (2d Cir.), *cert. denied,*

10

484 U.S. 855 (1987) ("It is also true that a surety's liability is derivative from its principal's liability"). Thus, if Empire Core is not liable to Plaintiff, or if the Subcontract prevents plaintiff from asserting a claim against Empire Core for amounts due for work performed (*see* Subcontract, ¶¶ 2.3(a), 2.3(b), 2.4), then Plaintiff similarly cannot recover from Harco.

The third and fourth Rule 56(d) factors are not relevant here. Rule 26(d)(1) precludes a party from seeking discovery before the parties have conferred pursuant to Rule 26(f). The parties have not conferred. The initial Rule 16 conference was scheduled for May 12, 2025, but the Court adjourned it (upon the parties' joint request) after Plaintiff filed this motion. Respecting Rule 26(d)(1), Harco had yet to serve any discovery demands when Plaintiff filed its motion, notwithstanding Plaintiff's service of document demands and interrogatories upon Harco in violation of the Rule.

Harco has submitted Certifications satisfying the requirements of Rule 56(d), identifying the numerous factual issues relevant to Plaintiff's claim, demonstrating why the information sought is material and necessary, and explaining that the reason Harco has not sought this information previously is because the Federal Rules precluded Harco from seeking any discovery from Plaintiff before Plaintiff filed this motion. "Without the benefit of even the most basic discovery", Harco is "at a disadvantage in [its] ability to properly respond to a motion for summary judgment." *Carpenter v. Mohawk Valley Cmty. Coll.,* No. 18-cv-1268 (GLS/TWD), 2020 WL 1915144, *3 (N.D.N.Y. Apr. 20, 2020). Without Harco having had "the opportunity to discover any of the information necessary to litigate a summary judgment motion",

11

Plaintiff's motion "is premature".  *Ward v. Rodriguez,* No. 22-CV-6497-FPG, 2025 WL 254493, *2 (W.D.N.Y. Jan. 21, 2025).

## Conclusion

There is nothing about this case that makes it one of the "rarest" of cases where an award of summary judgment against a defendant that has not had the opportunity to conduct any discovery possibly could be appropriate.  Plaintiff's motion utterly fails to make any argument otherwise.  For the reasons described above, Plaintiff's motion for summary judgment is premature and should be denied in its entirety.

Dated: May 22, 2025

        Respectfully submitted,

        **CHIESA SHAHINIAN & GIANTOMASI PC**
        Attorneys for Defendant
        *Harco National Insurance Company*

        By:  */s Adam P. Friedman*
                Adam P. Friedman

        11 Times Square, 34th Floor
        New York, New York  10036
        (212) 973-0572
        afriedman@csglaw.com