**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**CREATIVE DIRECTION CONSTRUCTION & DESIGN, LLC,**

**Plaintiff,**

**v.** **1:25-CV-179 (FJS/DJS)**

**HARCO NATIONAL INSURANCE COMPANY,**

**Defendant.**

---

| **APPEARANCES** | **OF COUNSEL** |
| --- | --- |
| **GLASSBERG & ASSOCIATES, LLC**<br>8 Haven Avenue - Suite 215<br>Port Washington, New York 11050<br>Attorneys for Plaintiff | **STEVEN GLASSBERG, ESQ.** |
| **CHIESA SHAHINIAN & GIANTOMASI PC**<br>11 Times Square, 34th Floor<br>New York, New York 10036<br>Attorneys for Defendant | **ADAM P. FRIEDMAN, ESQ.** |

**SCULLIN, Senior Judge**

# MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Pending before the Court is Plaintiff Creative Direction Construction & Design, LLC's ("CDCD") motion for summary judgment. *See* Dkt. No. 10. Defendant Harco National Insurance Company ("Harco") opposes the motion. *See* Dkt. No. 18.

## II. BACKGROUND[1]

### A. Relevant Procedural History and Plaintiff's Amended Complaint

On February 7, 2025, Plaintiff commenced this action to recover on a bond issued by Defendant, which guaranteed payment for labor and materials furnished in connection with a certain construction project known as the "Belleayre Ski Center [Discovery Lodge] and [Overlook Lodge]" improvements project (the "Project"). *See generally* Dkt. No. 1, Complaint.

On February 13, 2025, Plaintiff amended its complaint. *See* Dkt. No. 5, Amended Complaint. A brief summary of the allegations in Plaintiff's Amended Complaint follows. Non-party Empire Core Group ("Empire"), as general contractor, entered into a contract with New York State Olympic Regional Development Authority ("ORDA"), as owner, to furnish labor, materials, and equipment for the Project. *See id.* at ¶¶ 1, 12.

Because the Project was a public improvement project, Empire was required to secure a labor and materials bond. *See* Dkt. No. 10-4, Labor and Materials Bond. Accordingly, Empire secured a Labor and Material Payment Bond from Defendant in the amount of $21,714,500.00

[1] References to page numbers of documents in the record are to the page numbers that the Court's Electronic Case Filing System generates, which can be found in the upper right corner of those pages.

(the "Bond"). *See* Amended Complaint at ¶ 2. Plaintiff asserts that, under the terms of the Bond, Defendant, as surety, and Empire, as principal, agreed to jointly and severally be liable for payment of "all monies due to all persons furnishing labor and materials used, or reasonably required for use, in connection with the . . . Subcontract." *See id.* at ¶¶ 14, 17.

Subsequent to securing the Bond, Empire entered into a subcontract with Plaintiff, wherein Plaintiff agreed to furnish certain labor, materials, and equipment for the Project (the "Subcontract"). *See id.* at ¶ 12. Plaintiff alleges that, despite performing all of its obligations under the Subcontract, *see* Amended Complaint at ¶ 15, it is currently due $1,027,946.63 plus interest for labor and materials it furnished to Empire under the Subcontract. *See id.* at ¶ 16. Plaintiff made demands for payment to Empire and Defendant for the balance it is owed for its work on the Project; however, despite Plaintiff's demands, neither Empire nor Defendant made payment to Plaintiff. *See id.* at ¶¶ 16-18. Accordingly, Plaintiff demands "judgment against Defendant . . . in the amount of $1,027,946.63, together with interest thereon and the costs of this action." *See id.* at ¶ 19.

The parties did not conduct discovery in this case, and an initial conference has not yet taken place. Prior to Plaintiff filing its motion for summary judgment, Magistrate Judge Stewart scheduled an initial conference to take place on May 12, 2025. *See* Dkt. No. 3. However, on May 2, 2025, the parties filed a joint letter requesting that Magistrate Judge Stewart postpone the initial conference. *See* Dkt. No. 11.

**B. Undisputed Material Facts on Plaintiff's Motion for Summary Judgment**

Before reciting the material facts of this case, the Court must address three issues it has identified in Defendant's responses to Plaintiff's Statement of Material Facts ("SMF").

First, in its response to Plaintiff's SMF, Defendant "admits" some of the facts asserted by Plaintiff but then includes additional facts and/or argument in those responses. *See, e.g.*, Defendant's Response to Plaintiff's SMF at ¶¶ 2, 18. Where this occurs, the Court will deem those facts admitted and disregard the additional factual assertions and/or argument that Defendant provides in its responses. *See CA, Inc. v. New Relic, Inc.*, No. CV 12-5468 (AKT), 2015 WL 1611993, at *2 n.3 (E.D.N.Y. Apr. 8, 2015) (holding that "the Court will consider the statement provided by [Plaintiff] as undisputed because [Defendant's] initial response in each instance is, in fact, 'Undisputed'" (citing *Washington v. City of New York*, No. 05 CIV. 8884, 2009 WL 1585947, at *1 n.2 (S.D.N.Y. June 5, 2009) (taking "'as true' the statement of relevant facts provide by the defendants where the plaintiffs['] initial response in each instance was 'Admit' . . .")).

To the extent that Defendant desired to set forth additional material facts that it contends are in dispute, Defendant was required to do so in separately numbered paragraphs. *See Johnson v. City of Troy*, No. 14-CV-0817 (GTS/TWD), 2016 U.S. Dist. LEXIS 127833, 2016 WL 5107124, at *8 n.12 (N.D.N.Y. Sept. 20, 2016) (Suddaby, C.J.) ("To the extent that a non-movant desires to set forth any additional material facts that he contends are in dispute, he or she is required . . . to do so in separately numbered paragraphs.").

Second, in its responses to Plaintiff's SMF, Defendant refuses to admit or deny certain asserted facts. *See, e.g.*, Defendant's Response to Plaintiff's SMF at ¶¶ 2, 3, 4, 5, 6, 7, 8, 9,11, 12, 13, 14, 15. Instead, Defendant responds that it has "not had the opportunity to discover

information relevant to Plaintiff's motion" and therefore "can neither admit nor deny" the asserted statement. *See id.* This too is impermissible. *See Checksfield v. IRS*, No. 5:21-cv-1180 (GTS), 2024 U.S. Dist. LEXIS 30, at *4-5 (N.D.N.Y. Jan. 2, 2024) (finding that the plaintiff's response to defendant's statement of material facts "violate[d] Local Rule 56.1(b) [because, among other things], he often fail[ed] to either expressly admit or deny the fact that Defendant assert[ed]"); *see also In re Horowitz*, No. 14-36884 (CGM), 2016 WL 1039581, at *1 n.2 (Bankr. S.D.N.Y. Mar. 14, 2016) ("[A] response contending to neither admit or deny an allegation does not create a genuine issue of fact" (citation omitted)); *Yennard v. Boces*, 353 F. Supp. 3d 194, 197 (N.D.N.Y. 2019) (finding that "Plaintiff['s] refus[al] to expressly admit or deny the facts asserted by Defendant" was "impermissible").

As a result, the Court must decide whether the facts that Defendant "neither admit[ted] nor den[ied]" are deemed admitted. *See id.* "[B]efore [Plaintiff's] factual assertions may be deemed to have been 'admitted' by [Defendant] pursuant to [Local Rule 56.1] of the Local Rules of Practice for this Court, those factual assertions must be (1) supported by the record evidence to which [Plaintiff] has cited in its [Rule 56.1] Statement, and (2) not contradicted by any record evidence that the Court has come across during its review of the record. . . ." *Boces*, 353 F. Supp. 3d at 197. After reviewing the record, this Court deems that Defendant admitted paragraphs 2, 3, 4, 5, 6, 7, 8, 9,11, 12, 13, 14, 15, and 16 of Plaintiff's SMF by virtue of those facts being (i) supported by those parts of the record to which Plaintiff cites and (ii) otherwise uncontradicted by the record.

Lastly, Defendant denies the facts set forth in paragraph 10 of Plaintiff's SMF,[2] yet fails to cite any portion of the record that supports Defendant's denial—Defendant merely states "Denied." *See* Defendant's Response to Plaintiff's SMF at ¶ 10. In light of Defendant's failure to cite to any portion of the record in support of its denial, this "Court will disregard Defendant's denial[] and deem [Plaintiff's] asserted fact[] as admitted to the extent that [it is] supported by admissible record evidence."[3] *See Maioriello v. N.Y. State Office for Developmental Disabilities*, 272 F. Supp. 3d 307, 312 (N.D.N.Y. 2017) (citations omitted).

With the above addressed, a summary of the pertinent facts to this dispute follows. On February 13, 2024, Empire and Defendant executed a labor and materials payment bond in the amount of $21,714,500.00 for the Project. *See* Dkt. No. 10-1, Plaintiff's SMF, at ¶ 1. The Bond states that, Empire as principal, and Defendant, as surety, are "jointly and severally" liable on the Bond. *See id.* at ¶ 2; *see also* Dkt. No. 10-4, Labor and Materials Payment Bond.

On August 28, 2024, Empire, as the general contractor of the Project, subcontracted Plaintiff to perform certain work on the Project. *See* Plaintiff's SMF at ¶ 3. The Subcontract provides that Empire was to pay Plaintiff the sum of $5,050,000.00. *See id.* at ¶ 4. Throughout the duration of Plaintiff's work on the Project, Plaintiff issued six change orders—each of which

---

[2] Paragraph 10 of Plaintiff's SMF states as follows: "On November 26, 2024, Plaintiff notified Harco of its outstanding balance of $1,123,106.53 and sought to recover the amount due under the Payment Bond, engaging in correspondence with Harco on this matter." *See* Dkt. No. 10-1, Plaintiff's SMF, at ¶ 10.

[3] With its SMF, Plaintiff submitted copies of correspondence between the parties wherein Defendant "acknowledge[d] receipt of [Plaintiff's] letter and Proof of Claim dated November 26 . . ." and advised Plaintiff that it was in the process of reviewing Plaintiff's claim. *See* Plaintiff's SMF at ¶ 10; *see also* Dkt. No. 10-10, Email from Harco Acknowledging Receipt of Plaintiff's Proof of Claim Dated November 26, at 3. Thus, Defendant's denial of this fact is contrary to the record, and Plaintiff's asserted fact is supported by the record.

were signed by Empire and explicitly marked as "approved." *See* Plaintiff's SMF at ¶ 5; *see also* Dkt. No. 10-6, Change Orders. The sum of the approved change orders is $380,699.08. *See id.*

Plaintiff submitted to Empire two applications for payment. *See* Plaintiff's SMF at ¶¶ 6, 12-15; *see also* Dkt. No. 10-7, Plaintiff's Applications for Payment. Plaintiff's first application for payment was in the amount of $780,091.63, and was submitted on September 30, 2024. *See* Dkt. No. 10-7, Plaintiff's Applications for Payment, at 1. Plaintiff's second application for payment was in the amount of $247,855.00, and was submitted on October 31, 2024. *See id.* at 3. Plaintiff withheld a total of $95,159.90 as retainage from its applications for payment.[4] *See* Plaintiff's SMF, at ¶ 6.

Neither Empire nor ORDA disputed or rejected Plaintiff's applications for payment. *See id.* at ¶ 7. Additionally, Plaintiff did not receive any notices of default or notices to cure from either Empire or ORDA. *Id.* Plaintiff contends that its work on the Project was "fully satisfactory and adhered to all contractual provisions." *See id.* at ¶ 8. In support of this contention, Plaintiff directs the Court's attention to a certain letter dated October 14, 2024 that Plaintiff received from Empire, wherein Empire stated, *inter alia*, that it "wanted to take a moment to thank [Plaintiff] for the effort and the quality of [its] work so far" and that Plaintiff's "personal attention and presence in the field to help direct [its] manpower has been a great help." *See id.* at ¶ 9; *see also* Dkt. No. 10-9, Empire's October 14, 2024 Letter to Plaintiff.

---

[4] The Subcontract required Plaintiff to deduct "a reserve of ten percent (10%)" from its applications for payment. *See* Dkt. No. 10-5, Subcontract, at ¶ 2.3 Despite the Subcontract's requirement to deduct a 10% reserve, Plaintiff deducted a 5% reserve from each application for payment—$41,057.45 from its first application for payment and $54,102.45 from its second application for payment.

On or about October 28, 2024, ORDA terminated its prime contract with Empire. *See* Plaintiff's SMF at ¶ 18. Pursuant to Paragraph 13.3 of Empire and Plaintiff's Subcontract, in the event the Subcontract is terminated as a result of the prime contract's termination or takeover:

> the [Subcontractor] shall still be entitled to payment for all completed and accepted work, reasonable demobilization costs and any additional expenses directly incurred due to the termination [which] … shall not exceed the full value of this [Subcontract], ensuring the [Subcontractor] incurs no loss due to the cancellation or reassignment of the Prime Contract.

*See id.* at ¶ 17; *see also* Dkt. No. 10-5, Subcontract, at ¶ 13.3.

As of the date of Plaintiff's motion for summary judgment, the amounts requested in Plaintiff's applications for payment ($1,027,946.63) plus the amounts withheld as retainage ($95,159.90) have not been paid. *See* Dkt. No. 10-3, Wallace Affirmation, at ¶ 27. Consequently, on November 26, 2024, Plaintiff notified Defendant of its outstanding balance of $1,123,106.53 and sought to recover the amount due under the Bond.[5] *See* Dkt. No. 10-1, Plaintiff's SMF, at ¶ 10; *see also* Wallace Affirmation, at ¶ 16; Dkt. No. 10-10, Correspondence between Defendant and Plaintiff, at 3.

Accordingly, Plaintiff now argues that it is entitled to payment in the amount of $1,123,106.53[6] from Defendant for the labor and materials it furnished on the Project.

---

[5] Defendant denies this material fact, *see* Dkt. No. 17, Defendant's Response to Plaintiff's SMF, at ¶ 10. However, *see supra,* because Defendant fails to cite to any portion of the record in support of its denial, and Plaintiff's submissions support this fact, the Court deems this fact to be admitted.

[6] Plaintiff's Amended Complaint demands judgment in the amount of $1,027,946.63, plus interest. *See* Dkt. No. 5. This amount does not include the $95,159.90 withhold as retainage. In contrast, Plaintiff's motion for summary judgment requests judgment to be entered in Plaintiff's favor the amount of $1,123,106.53—the sum of $1,027,946.63 (total of Plaintiff's applications for payment) *plus* $95,159.90 (retainage withheld). Retainage is a common practice in

## C. The Parties' Arguments

### *1. Plaintiff's Position*

Generally, in its memorandum of law, Plaintiff argues that it is entitled to payment under the Bond because (i) it satisfactorily performed its obligations under the Subcontract; (ii) it has satisfied all of the requirements of New York State Finance Law § 137 ("SFL § 137"); and (iii) Defendant, as a surety, is required to pay the amounts due for the material and labor Plaintiff furnished under the Subcontract. *See generally* Dkt. No. 10-2, Plaintiff's Memorandum of Law.

First, Plaintiff argues that, on or about February 13, 2024, Defendant issued a payment bond naming Empire as principal and Defendant as surety for the Project and that said Bond provides that "Defendant agreed to bind itself and assume joint and several liability with [Empire] for the General Contract." *See id.* at 6. Accordingly, Plaintiff asserts that "there is no genuine dispute as to the existence of a payment bond issued by Defendant, which permits Plaintiff to pursue a claim under SFL § 137(3)." *See id.*

Second, Plaintiff argues that it is undisputed that, on or about August 28, 2024, "Plaintiff entered into a [subcontract] with [Empire], under which Plaintiff agreed to perform professional construction services on the [Project;]. . .[therefore, Plaintiff] clearly established the existence of a contractual relationship with the principal of the [Bond]," Empire. *See id.* at 7.

Next, Plaintiff contends that it "fulfilled its contractual obligations in accordance with the highest standards of workmanship, as required by the Subcontract." *See id*. Plaintiff did not

---

construction contracts which entails "the retention of a percentage of a contractor's monthly progress payments." *WestLB AG N.Y. Branch v. TPS McAdams, LLC (In re Enron Corp.)*, 370 B.R. 583, 594 (Bankr. S.D.N.Y. 2007). "On the date of final completion, the contractor will receive the amount retained, usually with interest, after certain other adjustments." *Id*. (citation omitted). Therefore, because Plaintiff is no longer working on the Project, the withheld retainage became due.

receive any complaints "regarding alleged defective work or breach of the Subcontract from [Empire], Defendant, or the owner ORDA." *See id.* at 8. Nor did Plaintiff receive any notices of default or cure. *See id.* Plaintiff cites a letter that it received from Empire on October 14, 2024, "acknowledging that its work on the Project was satisfactory and adhered to all the contractual provisions of the Subcontract." *See id.* Thus, Plaintiff argues that "absent any complaints, notices to cure etc., it is undisputed that Plaintiff complied with the Subcontract." *See id.*

Plaintiff then argues that it satisfied the statutory minimum waiting period set forth in SFL § 137 because, as of the date of Plaintiff's motion for summary judgment, more than five months had passed since Plaintiff submitted its applications for payment to Empire, which exceeds the three-month waiting period in SFL § 137. *See* Dkt. No. 10-2, Plaintiff's Memorandum of Law, at 9.

Finally, Plaintiff argues that it satisfied the notice requirement set forth in SFL § 137 because (i) Plaintiff had a direct contractual relationship with Empire, the contractor and principal on the Bond and, therefore, was not required to provide notice under SFL § 137, and (ii) despite not being required to provide notice, Plaintiff nevertheless "submitted notice of the outstanding payment of $1,123,106.53 to both [Empire] and Harco on or about November 26, 2024, within the required one hundred twenty (120) days of its last day of work on the Project." *See id.* at 10.

In light of the above, Plaintiff argues that it has satisfied all requirements under SFL § 137 and is entitled to payment under the Bond. Plaintiff then requests this Court award it reasonable attorneys' fees pursuant to Finance Law § 137(4)(c) because "there is no dispute of material fact regarding Plaintiff's entitlement to request payment of $1,123,106.53 from Defendant under the Payment Bond." *See id.* at 10.

***2. Defendant's Position***

Generally, Defendant argues that summary judgment is premature and that the language of the Subcontract requires ORDA to accept Plaintiff's work as a condition precedent to payment and ORDA did not accept Plaintiff's work. *See generally* Dkt. No. 18, Defendant's Memorandum of Law.

First, Defendant asserts that there "are significant questions about the legitimacy and merit[s] of Plaintiff's claim" and that "documentation necessary to address these questions is maintained by parties other than [Defendant]." *See id.* at 5. Specifically, Defendant argues that it requires "discovery of Empire [] to ascertain the basis for non-payment despite [Empire's] purported satisfaction with Plaintiff's work."[7] *See id.* at 8.

Defendant then argues that "the extent to which Plaintiff performed any of the defective work that provided a basis for ORDA's termination of the [prime contract] for cause is unknown," and that, "to date, three aspects of defective work performed by Plaintiff have been identified." *See id.*

The "three aspects of defective work" include the following: (i) "the cold form metal framing installed by Plaintiff was installed incorrectly and, per ORDA's design professional, will require removal and replacement;" (ii) "door openings in the kitchen area are too small and will require replacement for door frames"; and (iii) "the metal grid for the drop ceiling in the kitchen requires replacement because Plaintiff installed a white grid while the drawings call for a black grid." *See* Dkt. No. 15, Murphy Certification, at ¶ 14.

---

[7] Defendant contends that Empire's October 14, 2024 letter praising Plaintiff "is suspicious" and "requires investigation." *See* Dkt. No. 15, Murphy Certification, at ¶¶ 41, 47.

Defendant alleges that Butler Construction Group ("Butler"), who was retained pursuant to a takeover agreement between ORDA and Defendant after Empire's termination, *see* Dkt. No. 15-3, Takeover Agreement, is investigating the work done by Empire and its subcontractors and is still in the "early stages" of its investigation. *See* Murphy Certification at ¶¶ 11-12. Defendant argues that because "ORDA terminated Empire [] for cause for reasons that include the performance of defective work, [Defendant] anticipates that additional defective work performed by Plaintiff will be discovered as Butler continues to complete the Project." *See* Dkt. No. 18, Defendant's Memorandum of Law, at 8. Defendant then asserts that "[d]iscovery of Plaintiff, Empire [], and ORDA would allow [it] to obtain documentation relevant to these issues without having to wait for Butler to make its way through the entire Project." *See id.*

Defendant next contends that Plaintiff's timesheets are not accurate because they report that Defendant's crew was on site on September 25, 2024, and on that date ORDA's construction manager reported that "nobody from Plaintiff was on site that day." *See id.* at 11. Defendant asserts that "[t]hese curious aspects of Plaintiff's claim demonstrate [Defendant's] need for discovery regarding the legitimacy and propriety of its claim." *See id.*

Defendant then asserts that Rule 56(d) requires denial of Plaintiff's motion for summary judgment because Defendant should be permitted to discover information essential to its opposition. *See id.* at 12-13. Specifically Defendant argues that (i) it "requires discovery of the extent to which ORDA accepted (or has not accepted) Plaintiff's work; relatedly, the extent to which ORDA found Plaintiff's work to be defective or otherwise not acceptable; and the damage resulting therefrom. . .;" (ii) it "requires discovery of the extent to which Plaintiff delayed the work and the damage resulting therefrom". . .; (iii) it "requires discovery of the reasons that ORDA reduced Empire['s] payment requisition(s) and whether such reductions pertained to work

performed by Plaintiff . . . ; and (iv) it "requires discovery of the legitimacy and propriety of Plaintiff's claim, the accuracy of the timesheets upon which Plaintiff relies, the circumstances underlying the Empire [] Letter, the documentation that supports [Empire's] effusive praise for Plaintiff's performance, the reason(s) [Empire] has not paid Plaintiff,[8] and Empire['s] involvement with this suit, either directly or through Wilson & Chan."[9] *See id.* at 13-14.

In addition to Defendant's argument that it should be entitled to discovery, Defendant also argues that, according to the Subcontract, Empire "is not obligated to issue payment unless ORDA and its architect have accepted the work." *See id.* at 9 (citing Subcontract at ¶¶ 2.4, 13.3). Defendant argues that paragraphs 2.4 and 13.3 of the Subcontract describe "Plaintiff's entitlement to payment after ORDA's termination of its contract with Empire Core to be 'for all completed and accepted work,'" and Plaintiff's "papers do not contain anything indicating that ORDA accepted or approved any of Plaintiff's work, and the fact that ORDA terminated Empire [] for cause precludes any such assumption." *See id.*

---

[8] In its Memorandum of Law, Defendant states that it requires discovery of, ". . .the documentation that supports **Plaintiff's** effusive praise for **Plaintiff's performance"** and ". . . the reason(s) **Plaintiff** has not paid **Plaintiff**." *See* Dkt. No. 18 at 14. The Court believes that this was a spelling error, and Defendant instead meant to argue it requires discover of the "circumstances underlying the Empire [] Letter, the documentation that supports **Empire's** effusive praise for Plaintiff's performance" and "the reason(s) **Empire** has not paid Plaintiff"—thus, the Court replaces "Plaintiff" with "Empire" in these quotations.

[9] Defendant argues that there is "the appearance of impropriety" here. *See* Dkt. No. 18, Defendant's Memorandum of Law, at 10. Defendant asserts that, in pending litigations, "including an action commenced by Harco, Empire [] is represented by the law firm of Wilson & Chan," "Harco understands that Wilson & Chan also is counsel for Plaintiff and for Plaintiff's principal, Mr. Wallace" in other cases, and that "[p]resumably, Wilson & Chan declined to represent Plaintiff in this case because of a potential conflict (since Empire Core, as principal, owes an indemnity obligation to Harco, as surety, for any amounts due to Plaintiff)." *See id.*

Finally, Defendant argues that "Paragraph 2.3(b) of the Subcontract prevents Plaintiff from asserting a claim against Empire [] for work performed except to the extent that Empire [] received payment therefor from ORDA as, according to paragraph 2.3(a), Plaintiff and Empire [] agreed that Empire [] is acting as agent of ORDA." *See id.* at 9.

***3. Plaintiff's Reply***

Generally, in reply, Plaintiff argues that Defendant fails to raise any issues of material fact and instead "attempts to fabricate allegations against Plaintiff as a pretext to assert an alleged entitlement to discovery," and Defendant conflates Empire and Plaintiff. *See* Dkt. No. 21, Plaintiff's Reply Memorandum of Law, at 5-7.

Plaintiff first asserts that Defendant fails to provide any "supporting documentation" for its allegation that an "early-stage investigation" revealed defects in Plaintiff's work. *See id.* at 5. Plaintiff argues that Defendant is "unusually specific in describing these alleged deficiencies," yet "presents no evidence whatsoever to support its claims." *See id.*

Plaintiff next argues that Defendant "attempts to shift blame for certain allegedly defective roofing work by pointing to the fact that Plaintiff's scope of work included roofing." *See id.* However, Plaintiff's scope of work was limited to the installation of roof sheathing, and the issues raised by ORDA pertain to the alleged use of the incorrect roof color, the installation of non-Elevate materials, and the lack of proper licensing for individuals who performed that work—items that are "entirely unrelated to Plaintiff's scope of work." *See id.*

Plaintiff then argues that Defendant's characterization of the October 14, 2024, letter from Empire to Plaintiff as "suspicious" is "wholly unfounded and amounts to a manufactured conspiracy." *See* Plaintiff's Reply Memorandum of Law at 5. Plaintiff asserts that the October 14th letter "reflects the cooperative working relationship between Plaintiff and [Empire] and

"clearly demonstrates [Empire's] recognition of Plaintiff's high-quality work and professionalism." *See id.*

Next, with regard to the details of Plaintiff's payment requisitions, Plaintiff contends that "Defendant raises a number of hypotheticals regarding whether Plaintiff's payment requisitions were approved and whether [Empire] was acting as an agent of ORDA, but raises no genuine issue of material fact." *See id.* at 6. Plaintiff asserts that it "already offered factual proof that it received no contemporaneous nor subsequent notice that its payment requisitions were denied, disputed, or not approved in any way." *See id.*

Plaintiff then argues that, with regard to Defendant's allegations that Plaintiff's employees were not on site on September 25, 2024, because inclement weather was forecasted on September 25, Plaintiff adjusted the work schedule so that its employees reported earlier than usual. *See id.* Thus, at "the time ORDA's construction manager sent an email allegedly complaining about the absence of workers on site, Plaintiff's employees had already completed their work for the day." *See id.* Plaintiff submitted copies of the weather report, and timestamped photos of its employees at the worksite on September 25, 2024. *See* Dkt. Nos. 21-3, 21-4.

Plaintiff then argues that Defendant conflates Empire and Plaintiff in order to create an issue of fact. *See* Dkt. No. 21, Plaintiff's Reply Memorandum of Law, at 6-7. Plaintiff asserts that Empire and Plaintiff are entirely separate entities, and Defendant's expectations—that it expects that it will find additional defective work that Plaintiff performed—will not "stand to defeat this motion as such expectations constitute plain and simple speculation, conjecture, and/or conclusory allegations." *See id.*

Next, Plaintiff argues summary judgment is not premature, and that "the information that Harco seeks through discovery is not, and cannot be, in Plaintiff's possession;" instead, "the

information Harco now seeks in discovery . . . is within the possession, custody, or control of ORDA and therefore of Harco, not Plaintiff." *See id.* at 8-9. Plaintiff argues that Defendant was notified of Empire's termination on October 28, 2024, "along with ORDA's request that Harco commence the required work under the original contract within forty-five (45) days." *See id* at 9. Thus, more than seven months passed since that notice, and nearly six months passed since Defendant was required to begin work—which is "ample time to obtain the information it now claims to lack." *See id.*

Plaintiff concludes that because the discovery sought "pertains to matters outside Plaintiff's knowledge, Defendant cannot rely on a lack of discovery as a basis to claim that summary judgment is premature." *See id.* at 10.

## III. ANALYSIS

### A. Applicable Legal Standards

#### *1. The Standard for Summary Judgment Under Fed. R. Civ. P. 56*

Under Rule 56 of the Federal Rules of Civil Procedure, "[s]ummary judgment is appropriate '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *McNab v. Doe*, 686 F. App'x 49, 50 (2d Cir. 2017) (summary order) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

It is well-settled that, on a motion for summary judgment, the Court must "construe the evidence in the light most favorable to the non-moving party," *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999) (citation omitted), and may grant summary judgment only where "'there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)). An issue is genuine "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record that the moving party] believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment, who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in its favor. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Importantly, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgement; the requirement is that there be no *genuine* issue of *material* fact." *Liberty Lobby, Inc.*, 477 U.S. at 247-48. Moreover, "[a]party opposing a properly supported motion for summary judgment may not rest upon 'mere allegations or denials' asserted in his pleadings, *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)." *Doe v. Syracuse Univ.*, 457 F. Supp. 3d 178, 193 (N.D.N.Y. 2020) (McAvoy, J.); *see also Segreto v. Kirschner*, 977 F. Supp. 553, 556 (D. Conn. 1997) (stating that, "[i]n a summary judgment context, an opposing party's hope that further evidence may develop is an insufficient basis upon which to deny a motion" (citation omitted)).

Although summary judgment is generally granted only after discovery, "[w]here the issues are limited to questions of law, such as the interpretation of unambiguous contracts, summary judgment may be appropriate without discovery." *Cadwell v. Citibank, N.A.*, No. 23-

CV-1315 (GHW) (KHP), 2023 U.S. Dist. LEXIS 229798, at *12 (S.D.N.Y. Dec. 26, 2023); *Schanker & Hochberg, P.C. v. Berkley Assurance Co.*, 589 F. Supp. 3d 281, 296-97 (E.D.N.Y. 2022) (collecting cases); *Feeley v. Whitman Corp.*, 65 F. Supp. 2d 164, 172 (S.D.N.Y. 1999) (granting a pre-discovery summary judgment motion where the necessary facts were "clearly within the knowledge of the [non-movant], requiring no discovery"); *Nelson v. Deming*, 140 F. Supp. 3d 248, 257 (W.D.N.Y. 2015) (noting that "both the Second Circuit Court of Appeals and courts from within this district have indicated that a party may be granted summary judgment before an answer is filed" (citations omitted)).

### *2. The Standard for Actions on a Payment Bond under New York Law*

Because the Project is a public improvement contract, and the Bond explicitly incorporates SFL § 137,[10] the statutory scheme set forth in New York State Finance Law is controlling here.

SFL § 137 "provides a private right of action to subcontractors and suppliers on public improvement projects who are not promptly paid by the hiring contractor." *Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of New York*, 735 F. Supp. 2d 42, 86 (S.D.N.Y. 2010). The "legislative intent [of Section 137 is] to benefit and protect subcontractors and suppliers." *Id.*; *see also Bricklayers Ins. & Welfare Fund v. Speranza Brickwork, Inc.*, No. 13 CV 5204 (CLP), 2015 U.S. Dist. LEXIS 44819, *10 (E.D.N.Y. Mar. 31, 2015) ("State Finance Law § 137 provides

[10] The Bond provides that "ORDA having required [Empire] to furnish this bond in order to comply with the provisions of Section 137 of the New York State Finance Law, all rights and remedies on this bond shall inure solely to such persons and shall be determined in accordance with the provisions, conditions and limitations of said Section to the same extent as if they were copied at length herein." *See* Dkt. No. 10-4, Labor and Materials Payment Bond, at 1.

protection to the trade contractors and tradespeople who supply labor and materials to a public works project by mandating payment bonds for all public works projects." (citations omitted)).

SFL § 137 provides, in pertinent part, as follows:

> Every person who has furnished labor or material, to the contractor or to a subcontractor of the contractor, in the prosecution of the work provided for in the contract and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was performed or material was furnished by him for which the claim is made, shall have the right to sue on such payment bond in his own name for the amount, or the balance thereof, unpaid at the time of commencement of the action; provided, however, that a person having a direct contractual relationship with a subcontractor of the contractor furnishing the payment bond but no contractual relationship express or implied with such contractor shall not have a right of action upon the bond unless he shall have given written notice to such contractor within one hundred twenty days from the date on which the last of the labor was performed or the last of the material was furnished, for which his claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or for whom the labor was performed.

SFL § 137(3).

Thus, SFL § 137 requires the "posting of 'a bond guaranteeing prompt payment of moneys due to all persons furnishing labor or materials to the contractor or any subcontractors in the prosecution of the work provided for in' a public improvement contract . . . and 'permits such persons to sue on the bond if they are not paid in full for such materials[.]'" *Cobleskill Stone Prods., Inc. v. Merchants Nat'l Bonding, Inc.*, 223 A.D.3d 1021, 1023 (2024) (citing State Finance Law § 137(1)); *see also Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of New York*, 735 F. Supp. 2d 42, 85–86 (S.D.N.Y. 2010) (reiterating that SFL § 137 requires "'a bond guaranteeing prompt payment of moneys due to all persons furnishing labor or materials to the contractor or any subcontractors in the prosecution of the work provided for in such contract'" (quoting N.Y. State Fin. Law § 137(1)) (footnote omitted).

**B. Whether Summary Judgement is Appropriate as to Alleged Unpaid Balance**

***1. Is Summary Judgment Premature***

Defendant contends that summary judgment is premature. *See generally* Dkt. No. 18, Defendant's Memorandum of Law. Although the Court recognizes that Plaintiff's motion for summary judgment was filed early in this case, before the parties' initial conference, granting summary judgment at this time is not premature. *See, e.g.*, *Caslterigg Master Invs. Ltd. v. Charys Holding Co*., *Inc.*, No. 07 Civ. 9742 (GEL), 2008 WL 449690, at *3 (S.D.N.Y. Feb. 19, 2008) (granting pre-discovery motion for summary judgment); *Wells Fargo Bank Northwest, N.A. v. Taca Int'l Airlines, S.A.,* 247 F. Supp. 2d 352, 360 (S.D.N.Y. 2002) (noting that "summary judgment may be granted notwithstanding the absence of discovery" (internal citations omitted)); *Kennerly v. Campbell Chain Co*., 133 A.D.2d 669, 670 (2d Dep't. 1987); *Infostar Inc. v. Worcester Ins. Co.*, 924 F. Supp. 25, 29 (S.D.N.Y. 1996) (finding that pre-discovery motion for summary judgment was not premature).

"In deciding whether to grant summary judgment in the absence of discovery, a court must consider: (1) whether the lack of discovery was in any way due to fault or delay on the part of the nonmovant; (2) whether the nonmovant filed a sufficient Rule 56[d] affidavit . . . ; and (3) whether the nonmovant provided any basis for its belief that further discovery would alter the outcome of the summary judgment motion." *Caslterigg Master Invs. Ltd*., 2008 WL 449690, at *2 (quoting [*Wells Fargo Bank Northwest, N.A. v. Taca Int'l Airlines, S.A.*, 247 F. Supp. 2d 352, 360 (S.D.N.Y. 2002)] (citing *Kerger v. United States*, 87 F.3d 60, 65 (2d Cir. 1996) and *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995)).

"A Rule 56(d) affidavit must show "'(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine

issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.'" *Campbell v. Hon Norman St. George*, No. 1:23-cv-1594 (ECC/DJS), 2026 WL 2583112, *9 (N.D.N.Y. Sept. 1, 2026) (Coombe, J.) (quoting *Elliott v. Cartagena*, 84 F.4th 481, 493 (2d Cir. 2023) (citation omitted)) (other citation omitted). Rule 56 gives the Court discretion to deny or defer an otherwise supported motion for summary judgment to allow for further discovery – a court is nevertheless permitted to "reject a request for discovery, even if properly and timely made through a Rule 56[d] affidavit, if it deems the request to be based on speculation as to what potentially could be discovered." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994).

Here, with its opposition papers, Defendant submitted two certifications—one from Kyle P. Murphy, *see* Dkt. No. 15, Murphy Certification, and another from Defendant's attorney, Adam P. Friedman.[11] *See* Dkt. No. 16, Friedman Certification. Defendant asserts that "[t]he accompanying Certifications of Kyle P. Murphy and Adam P. Friedman contain the information that Rule 56(d) requires." *See* Dkt. No. 18, Defendant's Memorandum of Law.

Contrary to Defendant's assertion, the Court finds that Defendant's Rule 56(d) affidavits are not in compliance with Rule 56's requirements. First, the Murphy and Friedman certifications lack any information concerning (i) the efforts made to obtain the requested information, and (ii) why the affiants were unsuccessful in those efforts. Instead, Defendant argues that these two Rule 56(d) factors are "not relevant here." *See* Dkt. No. 18, Defendant's Memorandum of Law, at 15. Specifically, Defendant argues that these two factors are not "relevant" because "Rule 26(d)(1) precludes a party from seeking discovery before the parties have conferred pursuant to

---

[11] The two certifications Defendant submitted with its opposition do not explicitly state that they are made pursuant to Rule 56(d). However, the Court will construe the Murphy and Friedman certifications as Rule 56(d) affidavits.

Rule 26(f)" and "[t]he parties have not conferred" yet because the "Court adjourned" the "initial Rule 16 conference." *See id.*

However, despite the lack of an initial conference, Defendant had ample time to conduct its own discovery. According to Defendant's opposition papers, ORDA terminated Empire on October 28, 2024. *See* Dkt. No. 15, Murphy Certification, at ¶ 6. On that same day, "ORDA . . . demanded that [Defendant] complete the Contract pursuant to [Defendant's] obligations under the Performance Bond." *See id.* ¶ 8. Specifically, ORDA's October 28, 2024 letter to Defendant "demand[ed] that [Defendant] commence the required Work *within 45 days* after receipt of [ORDA's] letter." *See* Dkt. No. 15-2, ORDA's Demand to Defendant (emphasis added). Thus, as of December 12, 2024—45 days from October 28, 2024—Defendant had the opportunity to inspect Plaintiff's work and discover potential defects in Plaintiff's work on the Project, but it failed to do so. *See Scofield v. Trs. of Union Coll. in Town of Schenectady,* 267 A.D.2d 651, 652 (3d Dep't 1999) ("an opposing party must demonstrate how further discovery might reveal material facts in the movant's exclusive knowledge" (citations omitted)).

Moreover, after Plaintiff filed its motion for summary judgment, the parties submitted a **joint** letter requesting Magistrate Judge Stewart postpone the initial conference. *See* Dkt. No. 19, Joint Letter Requesting Postponement of Conference. Defendant had an opportunity to raise concerns pertaining to its need to obtain discovery, yet, rather than doing so, it submitted a joint letter to postpone the initial conference and therefore postpone its opportunity to obtain discovery—and now it seeks to use that fact to its benefit. Therefore, the Court finds that, in addition to Defendant's Rule 56(d) affidavits lacking all of the information Rule 56(d) requires, the lack of discovery of the facts Defendant now seeks is, in several ways, attributable to the delay or fault of Defendant itself.

Next, although Mr. Friedman's Certification identifies the facts sought to be obtained and how they are to be obtained, *see* Dkt. No 16, Friedman Certifcication, at ¶ 13, the Court is unpersuaded that additional discovery will impact the outcome of Plaintiff's summary judgment motion (*i.e.*, that the facts sought will create a genuine issue of material fact). Throughout its Memorandum of Law and the Certifications, Defendant generally argues that it requires discovery to determine whether Plaintiff fully performed in accordance with the Subcontract or whether Plaintiff's performance was deficient. *See generally* Dkt. No. 18, Defendant's Memorandum of Law.

Defendant asserts that, because "ORDA terminated Empire [] for cause for reasons that include the performance of defective work, [Defendant] expects that additional defective work that Plaintiff performed will be discovered." *See* Murphy Certification at ¶ 17. However, Empire and Plaintiff are separate entities and, even if ORDA terminated Empire for cause, this does not necessitate a finding that Plaintiff too performed deficiently.

Defendant's request for additional discovery is based on speculation as to what it could potentially discover. The record, however, is devoid of any notices of cure, notices of default, complaints regarding delays attributable to Plaintiff, or other forms of notice that Plaintiff's work on the project was deficient; to the contrary, it appears that Empire was fully satisfied with Plaintiff's work. *See* Dkt. No. 10-9, October 14, 2024 Letter from Empire to Plaintiff.

Defendant's mere expectation that additional evidence will be found is insufficient to defeat an otherwise properly supported motion for summary judgment. *See Millennium Pipeline Co., LLC v. Certain Permanent & Temp. Easements*, 552 F. App'x 37, 39 (2d Cir. 2014) (summary order) ("speculation is insufficient to defeat summary judgment" (citation omitted)); *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) ("Conclusory allegations, conjecture,

and speculation, however, are insufficient to create a genuine issue of fact." (citation omitted)). In light of the above, the Court finds further discovery will not create genuine issues of material facts.

Accordingly, under the facts of this case, summary judgment at this juncture is not premature.

***2. Has Plaintiff Satisfied the Requirements of SFL §137***

Having found that summary judgment is not premature, the Court now must assess whether Plaintiff is entitled to make a claim on the Bond pursuant to SFL § 137. The requirements of SFL § 137 can be summarized as follows (1) the existence of a bond; (2) furnishing labor or materials to a contractor or subcontractor; (3) failing to be paid in full within ninety days of the last day work was furnished; and (4) having a direct contractual relationship with the contractor, or alternatively, providing the requisite notice if there is no direct contractual relationship with the contractor. *See* SFL § 137(1)

First, it is undisputed that on February 13, 2024, Empire and Defendant executed a Labor and Materials Bond for the project. *See* Dkt. No. 10-1, Plaintiff's SMF, at ¶ 1; *see also* Dkt. No. 10-4, Labor and Materials Payment Bond. Moreover, the clear and unambiguous language of the Bond provides that Empire as principal, and Defendant, as surety, were to be "jointly and severally" liable on the Bond. *See* Plaintiff's SMF at ¶ 2; *see also* Dkt. No. 10-4, Labor and Materials Payment Bond.

Second, it is undisputed that Plaintiff furnished labor and materials to Empire and has not been paid for the labor and materials it furnished. *See* Plaintiff's SMF at ¶¶ 3, 6, 2-15, 27; *see also* Dkt. No. 10-8, Plaintiff's Payroll Records; Dkt. No. 10-7, Plaintiff's Payment Applications.

Next, it is also undisputed that more than ninety days have passed since Plaintiff ceased its work on the Project. Plaintiff's applications for payment are dated September 30, 2024 and October 31, 2024—well exceeding the ninety-day waiting period that SFL § 137 requires. *See* Dkt. No. 10-7, Plaintiff's Payment Applications.

Lastly, because Plaintiff had a direct relationship with the contractor, Empire, Plaintiff was not required to provide notice of its claim.

Accordingly, the Court finds that Plaintiff has satisfied the requirements of SFL § 137 and has met its *prima facie* burden of showing entitlement to payment under the Bond.

***3. Has Defendant Shown that it has Grounds for Withholding Payment Based on the Terms of the Subcontract***

Having found that Plaintiff established entitlement to payment under the Bond, the Court next turns to whether certain provisions of the Subcontract are sufficient to raise a genuine issue of material fact concerning Plaintiff's entitlement to the alleged unpaid balance.

As noted above, Defendant relies on certain contractual provisions of the Subcontract for its argument that Plaintiff is not entitled to the Subcontract balance at this time. In particular, Defendant asserts the following: (i) that under Paragraphs 2.4 and 13.3 of the Subcontract "Empire [] is not obligated to issue payment unless ORDA and its architect have accepted the work," *see* Dkt. No. 18, Defendant's Memorandum of Law, at 8-9; and (ii) that Paragraph 2.3(a) of the Subcontract "prevent[s] Plaintiff from asserting a claim against Empire [] for work performed except to the extent that Empire [] received payment therefor from ORDA." *See id.* at 9.

Paragraphs 2.4 and 13.3 of the Subcontract provide, in pertinent part, (i) "[f]inal payment to the [Subcontractor] shall be due within sixty (60) days after the completion and acceptance of

the Work by the General Contractor, the Architect and the owner. . . ."; and (ii) ". . . [s]hould this [Subcontract] ultimately be terminated as a result of the Prime Contract's termination or takeover, the [Subcontractor] shall still be entitled to payment for all completed and accepted work." *See* Dkt. 10-5, Subcontract, at ¶¶ 2.4, 13.3.

Additionally, Paragraph 2.3(a) provides that, Plaintiff hereby "[a]grees that the [Subcontract] Price shall be a non-recourse obligation with respect to [Empire], which is acting as an agent for Owner, and that the liability of [Empire] shall be limited to funds actually received by [Empire] from the Owner attributable to [Subcontractor's] Work." *See id.* at ¶ 2.3(a).

Defendant appears to contend that the aforementioned provisions create conditions precedent to Plaintiff's entitlement to payment from Empire under the Subcontract—specifically, that Plaintiff's work must be accepted prior to payment and that, if Empire does not receive payment from ORDA, Plaintiff is not entitled to payment.[12]

Although it is true that a surety's liability is limited to the liability of the principal, *see Underpinning & Found. Skanska, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 726 F. Supp. 2d 339, 342–43 (S.D.N.Y. 2010), the Court is unpersuaded by Defendant's argument that the aforementioned Subcontract provisions bar Plaintiff's entitlement to payment.

This Court finds *Conviron Controlled Env'ts, Inc. v. Arch Ins. Co.*, No. 14-cv-2030 (ADS) (SIL), 2015 WL 12556060, at *5 (E.D.N.Y. Nov. 13, 2015), illustrative of this point. In *Conviron*, the contract at issue contained provisions that conditioned a subcontractor's payment on the Owner's acceptance and payment. The court in *Conviron* noted that "Federal courts within

[12] In its memorandum of law, Defendant argues that "if Empire [] is not liable to Plaintiff, or if the Subcontract prevents plaintiff from asserting a claim against Empire Core for amounts due for work performed (*see* Subcontract, at ¶¶ 2.3(a), 2.3(b), 2.4), then Plaintiff similarly cannot recover from [Defendant]." *See* Dkt. No. 18, Defendant's Memorandum of Law, at 15.

this Circuit have recognized that such contractual clauses, which merely fix the time for payment to a subcontractor, are 'construed as allowing the general contractor to postpone payment to the subcontractor only for a *reasonable period of time* after the completion of the subcontract work.'" *Id.* at *6 (quoting *Nouveau Indus. v. Liberty Mut. Ins. Co.*, 08-cv-10408, 2011 U.S. Dist. LEXIS 101266, at *25-*26 (S.D.N.Y. Sept. 7, 2011) (collecting cases (emphasis supplied)). Thus, the court found that the "[c]ontract's requirement that payment to [the subcontractor] be conditioned upon written acceptance by the Owner is not a condition precedent to payment under the Bond . . . [but instead] fixes the time for payment, which . . . only works to postpone such payment 'for a reasonable period of time after the completion of the subcontract work.'" *Id.*

Likewise in *Gen. Acc. Ins. Co. of Am. v. Merritt-Meridian Constr. Corp.*, 975 F. Supp. 511 (S.D.N.Y. 1997), when analyzing contractual provisions that required owner acceptance as a condition precedent to payment, the court explained that

> Merritt contends that the subcontractors' claims for payment were not due and liquidated because the "condition precedent" of owner acceptance and payment for the work had not been met. However, the owner acceptance and payment provision does not create a condition precedent to payment of the subcontractors, but rather *establishes a time for payment*. The provision at issue here provides that final payment would not be made until thirty days after the owner accepted the subcontractor's work "as evidenced by the Owner's making final payment to the Contractor under the Prime Contract." In *Schuler-Haas*, the subcontract similarly provided that the general contractor was to make full payment to the subcontractor "when full payment for this subcontract work is received (by the general contractor) from the Owner." 371 N.Y.S.2d at 209. The Appellate Division held that this provision merely fixed the time when payment was due and did not establish a condition precedent to payment. 371 N.Y.S.2d at 211.

*Id.* at 518 (emphasis added) (footnote omitted).

Similarly, here, the Court finds that the Subcontract provisions Defendant cites, paragraphs 2.3(a), 2.4, and 13.3, are not conditions precedent to payment under the Bond but, instead, fix the time of payment to a reasonable time after completion of the subcontract work. *See also Action Interiors, Inc. v. Component Assembly Sys., Inc.*, 144 A.D.2d 606 (2d Dep't 1988) (provision that payment to subcontractor not due until owner paid general contractor, "while providing for a postponement of payment to permit the general contractor an opportunity to obtain funds from the owner . . ., only requires that payment be delayed for a reasonable time after completion of the subcontract work") (citations omitted); *Mass Transp. Elect. Constr Corp. v. Penta Constr. Corp.*, 140 A.D.2d 174 (1st Dep't 1988) (subcontract provision stating that the "'Contractor's obligation to make payment to the Subcontractor shall be limited to funds actually received by the Contractor from the Owner in payment of work performed by the Subcontractor'" not construed as setting forth payment from the owner to the general contractor as a condition precedent to payment to the subcontractor).

In this case, Plaintiff's last payment application was on October 31, 2024, nearly two years ago. Furthermore, as of the date of Defendant's opposition papers to Plaintiff's motion for summary judgment,[13] ORDA had more than six months to inspect and accept Plaintiff's work on the Project but failed to do so. More than a reasonable amount of time has lapsed since Plaintiff completed its work.

Defendant may not now rely on the Subcontract language as a justification for withholding Plaintiff's payment. "To hold otherwise would allow the Owner, to delay its own performance . . . to the substantial detriment of subcontractors, like [Plaintiff]." *Conviron Controlled Env'ts, Inc.*, 2015 WL 12556060, at *6. "Under these circumstances, the mere

---

[13] Defendant filed its opposition papers on May 22, 2025. *See* Dkt. Nos. 15-18.

existence of an acceptance clause in the [Subcontract] is insufficient to create an issue of fact where none otherwise exists." *Id.* at 7.

***4. Does Defendant's Opposition Concerning Alleged Defects in Plaintiff's Work Create an Issue of Fact***

In opposition to Plaintiff's motion for summary judgment, Defendant submitted, *inter alia*, a certification from Kyle P. Murphy, Vice President, Claims Counsel at IAT Insurance Group. *See* Dkt. No. 15, Murphy Certification.[14] In Mr. Murphy's certification, he asserts that Butler Construction[15] identified three aspects of Plaintiff's work that "are defective and require remediation." *See id.* at ¶¶ 11-13. According to Mr. Murphy's certification, the "three aspects of defective work" include: (1) "the cold form metal framing installed by Plaintiff was installed incorrectly and, per ORDA's design professional, will require removal and replacement;" (2) "door openings in the kitchen area are too small and will require replacement for door frames"; and (3) "the metal grid for the drop ceiling in the kitchen requires replacement because Plaintiff installed a white grid while the drawings call for a black grid." *See id.* at ¶ 14.

First, the aspects of Mr. Murphy's affirmation that are not based on personal knowledge—such as what Butler, allegedly, discovered—are insufficient to create an issue of fact and will not be considered by the Court. *See e.g.*, *Bernstein v. Vill. of Wesley Hills*, 95 F. Supp. 3d 547, 559 (S.D.N.Y. 2015), *aff'd*, 644 F. App'x 42 (2d Cir. 2016) (court refusing to

---

[14] Mr. Murphy is "responsible for claims against bonds that IAT's affiliate, defendant Harco National Insurance Company, executed, as surety." *See* Dkt. No. 15, Murphy Certification, at ¶ 1.

[15] Following Empire's termination, Defendant and ORDA entered into a Takeover Agreement. *See* Dkt. No. 15-3, Takeover Agreement. The Takeover Agreement requires Defendant to "undertake to cause the performance and completion" of Empire's scope of work. *See id.* at 1. Additionally, pursuant to the Takeover Agreement, Butler was retained as the "Completion Contractor" for the Project. *See id.* at 1-2.

consider certain portions of affirmation in reply to a motion for summary judgment because the assertions were not based on personal knowledge); *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 138 (2d Cir. 2009) ("for summary judgment purposes, '[a] supporting or opposing affidavit must be made on personal knowledge'" (citing Fed. R. Civ. P. 56(e)(1))).

Additionally, Defendant failed to submit any admissible evidence to support its assertion that three defects in *Plaintiff's* work have been discovered thus far—instead Defendant makes conclusory assertions and speculates that additional evidence will be found in the future.[16] These conclusory allegations are insufficient to defeat summary judgment. *See Perrelli v. Taylor*, 113 F. App'x 421, 422 (2d Cir. 2004) ("conclusory allegations . . . are insufficient to raise a triable issue of fact"); *see also Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

Moreover, the record is devoid of any notice of defects to Plaintiff, requests to cure, or complaints concerning Plaintiff's performance. To the contrary, the October 2024 letter from Empire to Plaintiff indicates that Plaintiff adequately performed its contractual obligations. *See* Dkt. No. 10-9, Letter from Empire to Plaintiff.

Accordingly, the Court finds that Defendant has failed to create an issue of fact as to Plaintiff's entitlement to payment of the balance Plaintiff asserts it is owed for the materials and labor it furnished pursuant to the Subcontract.

---

[16] In support of Defendant's assertion that it discovered defects in Plaintiff's work, Defendant submitted correspondence regarding a necessary roof repair. *See* Dkt. No. 15-4, Correspondence Regarding Roof. However, this correspondence states that "[t]he repair is needed on account of the work performed by *Empire*" – not Plaintiff. *See id.* at 1 (emphasis added). Moreover, as Plaintiff points out, *see* Dkt. No. 21, Plaintiff's Reply Memorandum of Law, at 5, the required roof repair did not concern Plaintiff's contractual scope of work, which was limited to the installation of roof sheathing. *See id*; *see also* Dkt. No. 10-5, Subcontract, at 30.

**C. Plaintiff's Request for an Award of Attorney's fees**

Pursuant to SFL § 137(4)(c), Plaintiff "requests an award in an amount in excess of $30,000.00 in attorneys' fees incurred in prosecuting this action" because "there is no genuine dispute of material fact regarding Plaintiff's entitlement to request payment of $1,123,106.53 from Defendant under the Payment Bond." *See* Dkt. No. 10-2, Plaintiff's Memorandum of Law, at 10-11.

New York State Finance Law § 137 provides, in relevant part:

> In any action on a payment bond furnished pursuant to this section . . . the court may determine and award reasonable attorney's fee to either party to such action when, upon reviewing the entire record, it appears that either the original claim or the defense interposed to such claim is without substantial basis in fact or law.

SFL § 137(4)(c).

Thus, the Court may grant Plaintiff the statutory remedy of attorney's fees if the Defendant's defense is without "substantial basis" in fact or law. *See id.* As the court noted in *Export Dev. Canada v. Elec. Apparatus & Power, L.L.C.*, No. 03 Civ. 2063 (HBP), 2008 WL 4900557, *19 (S.D.N.Y. Nov. 14, 2008), "the case law discussing what a 'substantial basis' is within the meaning of [SFL § 137(4)(c)] is sparse."

With that being said, the general consensus among courts that have addressed this issue is that an unsuccessful claim or defense alone does not automatically necessitate a finding that said defense or claim lacks substantial basis in law or fact; instead, a defense or claim is without substantial basis when there is no plausible ground for the defense or claim. *See id.* at 19 ("Although I find [plaintiff's] claims to be unavailing, I cannot conclude that they lack any plausible basis"); *see also Beninati Roofing & Sheet Metal Co.*, 279 A.D.2d at 412 (awarding

plaintiff attorneys' fees where defendant surety's arguments were "without substantial basis" since there was "no plausible ground for [the surety's] claim"); *see also Trs. of Local Union No. 580 of the Int'l Ass'n of Bridge, Structural*, *Ornamental & Reinforcing Iron Workers Emp. Benefit Funds v. EE Cruz*, 2021 NY Slip Op 30161(U), 8 (Sup. Ct., N.Y. Cnty., 2021) (granting plaintiff's request for attorney's fees pursuant to SFL § 137(4)(c), noting that "[w]hile an unsuccessful defense alone does not suffice as a basis for an award of attorneys' fees under the statute, an award of attorneys' fees is appropriate to a prevailing party in an action on a contractor's payment bond where there was no plausible ground for the surety's defense" (citations omitted)); *Better Engineered Sys. Tech., Inc. v Sound Elec. Corp.*, 289 A.D.2d 174, 736 NYS2d 316, 318 (1st Dep't 2001) (granting attorneys' fees where "insurance company's defense to payment of its bond lacked a substantial basis in law or fact"); *Erie Materials, Inc. v. Universal Grp. of N.Y., Inc.*, 101 A.D.3d 1529, 1531(3rd Dep't 2012) (finding, upon appellate review, that the lower court did not err in granting plaintiff's requests for attorneys' fees pursuant to SFL § 137(4)(c) because the surety "aggressively defended against plaintiff's entire claim, although only a relatively minor portion thereof was actually in dispute").

For all of the reasons set forth above, the Court finds that Defendant's defense lacks substantial basis in law or fact. Accordingly, the Court finds that Plaintiff is entitled to reasonable attorney's fees pursuant to SFL § 137(4)(c).

## IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for summary judgement, *see* Dkt. No. 10, is **GRANTED;** and the Court further

**ORDERS** that Plaintiff shall, within thirty days of this Memorandum-Decision and Order, file an affidavit and supporting documentation in support of its request for reasonable attorney's fees; and the Court further

**ORDERS** that Plaintiff's affidavit and documentation in support of its request for attorney's fees shall include (i) contemporary time records of each attorney or staff member who worked on this case; (ii) an explanation of the work performed; (iii) a short biography of each attorney or staff member who worked on the case, including the years of practice; and (iv) the hourly rate charged by each attorney or staff member who worked on this case; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Plaintiff and against Defendant in the sum of $1,123,106.53, together with prejudgment interest at a rate of 9% per annum, accruing from November 26, 2024,[17] to the date that judgment is entered.

**IT IS SO ORDERED.**

Dated: September 29, 2026
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

[17] SFL § 137 provides that interest shall accrue "from the date when demand for payment was made pursuant to the labor and material payment bond." *See* SFL § 137(c). Plaintiff's Proof of Claim for non-payment to Defendant is dated November 26, 2024. *See* Dkt. No. 15-9, Plaintiff's Proof of Claim, at 2; *see also* Dkt. No. 10-10, Correspondence from Defendant dated November 27, 2024, at 3 (wherein Defendant "acknowledge[s] receipt of [Plaintiff's] letter and Proof of claim dated November 26").